[S.F. No. 22866. In Bank. June 7, 1972.]

BARBARA CAMERON, a Minor, etc., Plaintiff and Appellant, v. THE STATE OF CALIFORNIA, Defendant and Respondent.

STEVEN TICKES, a Minor, etc., Plaintiff and Appellant, v. THE STATE OF CALIFORNIA, Defendant and Respondent.

(Consolidated Cases.)

320

Morgan, Beauzay & Hammer and W. Robert Morgan for Plaintiffs and Appellants.

Harry S. Fenton, John P. Horgan, James T. Johnson, William R. Edgar, Donald C. Velasco and Robert J. DeFea for Defendant and Respondent.

## OPINION

SULLIVAN, J.—Plaintiffs appeal on a single record from a judgment of nonsuit entered in two actions for damages for personal injuries which were consolidated for trial.

We shall examine the evidence and detail the pertinent facts in accordance with the rules applicable to nonsuits.[1] On the morning of April 10, 1968, plaintiffs Steven Tickes and Barbara Cameron were riding in an automobile which was being driven by Daniel Graham in a general southerly direction along Highway 9 in Santa Cruz County. The weather was clear and the pavement was dry. Just south of Waterman's Gap, the road took a steep downgrade with a rather sharp "S" curve. Graham, who was driving on the right side of the road at a speed somewhat in excess of 35 miles per hour, proceeded down the grade and entered the above curve. As he did so, the occupants of the vehicle felt a bump. The automobile then suddenly went out of control, left the roadway, rode part way up a berm located on the shoulder, slid a distance of 117 feet, and collided with the side of a hill. Physical evidence showed that before the car moved out of the lane in which it had been traveling, one of its tires left a mark 96 feet long on the pavement. As a result of the collision, plaintiffs sustained personal injuries.

Plaintiffs, by their guardians ad litem and represented by the same counsel, brought separate actions for damages. The complaints which are almost identical in language name as defendants the driver of the automobile, Graham, the State of California, and other persons and corporations sued by fictitious names. Each complaint contains four separately stated causes of action (the first cause being incorporated by reference into each of the remaining three) which for our present purposes may be summarized thusly: The first two causes, directed principally against Graham, assert respectively his negligence and his willful misconduct. The third cause, directed principally against the manufacturer and the seller of the automobile, alleges liability for a defective product.[2] The fourth

---

[1] See *Stanford* v. *City of Ontario* and cases there cited, 6 Cal.3d 870 [101 Cal. Rptr. 97, 495 P.2d 425].

[2] Apparently plaintiffs never substituted real defendants for the fictitiously named corporate defendants and never pursued the third cause of action. No judgment has been entered on this cause of action.

cause of action, against the State of California, alleges that (1) the state failed in its duty to keep the highway in a safe condition in that the curve was so improperly graded or banked that an automobile could not negotiate the curve even though going at a lawful speed and (2) that the state had failed to warn of this dangerous condition.

As previously stated the two actions were consolidated for trial. At the close of all the evidence the court granted the state's motion for a nonsuit made on the grounds that there was an insufficiency of proof of a dangerous condition of the highway and that in any event the state was immune from liability under Government Code section 830.6. Judgment of nonsuit was entered accordingly in favor of the state.[3] Subsequently the jury returned a verdict for defendant Graham and against plaintiffs. This appeal has been taken only from the judgment of nonsuit.

Plaintiffs make two main contentions before us: First, that the design immunity conferred by Government Code section 830.6 is inapplicable since the design plan approved by the Santa Cruz Board of Supervisors did not specify the degree of superelevation and since it was the improper superelevation which constituted the dangerous condition causing the accident; and, second, that even if "design immunity" applies to immunize the state for negligence in the creation of the dangerous condition, the concurrent negligence by the state in failing to warn of the dangerous condition provides an independent basis for recovery under Government Code section 830.8. We agree with both contentions. Accordingly, we reverse the judgment.

---

[3]The record discloses that at the time plaintiffs rested their case in chief, the state actually made two motions—one for a nonsuit for insufficiency of proof and the other for a directed verdict on the ground that the state had established, through declarations submitted with respect to an earlier motion for summary judgment, the defense of design immunity under Government Code section 830.6 as a matter of law. The court received defense evidence "without prejudice to *the* motion," (italics added) apparently treating the two separate motions, as a single motion on two grounds. There is authority in California which would allow a motion for nonsuit to be postponed until the close of all evidence. (See 4 Witkin, Cal. Procedure (2d ed. 1971) § 359, p. 3157.)

At the close of all the evidence the court granted the state's motion and entered a judgment of nonsuit, specifying both the nonsuit ground of insufficiency of proof and the directed verdict ground that the state had established the defense of design immunity. Though there was no specific ruling on the motion for directed verdict, the record fairly discloses, and the parties have throughout this appeal treated the judgment as containing two separate rulings by the court—one a nonsuit due to plaintiffs' insufficiency of proof to establish a dangerous condition under Government Code section 835 and the other a directed verdict due to the state establishing as a matter of law the elements of the defense of design immunity under Government Code section 830.6—though designated by the single term judgment of nonsuit.

■ Generally speaking a public entity is liable for injury caused by a dangerous condition of its property created by a negligent or wrongful act or omission of its employee acting within the course and scope of his employment. (Gov. Code, § 835.)[4] Section 830, subdivision (a),[5] defines dangerous condition as a condition of property which creates a substantial risk of injury when the property is used in a foreseeable manner with due care. Contrary to the state's position, we are satisfied that when viewed, as it must be, in the light most favorable to plaintiffs, there is sufficient evidence in the record to support a finding of such dangerous condition.

The dangerous condition asserted to exist in the instant case involves the superelevation, otherwise known as "banking," of the "S" curve on that part of Highway 9 where the accident occurred. Normally, a curve is superelevated or banked to assist a driver in making the curve. ■ A civil engineer, formerly employed by the Design Department of the California Division of Highways, testified that the superelevation on the curve was not consistent across the roadway, but changed abruptly; that this abrupt change would tend to shift the weight of the car so as to lift one wheel off the ground and tend to make the car roll; that a driver entering the curve could not ascertain the existence of this change in superelevation and thereby determine the proper speed to negotiate the curve, until already committed to the curve. At this point the driver would find himself trapped into believing the curve continues to the left, while it actually continues to the right. In such event he may well be unable to successfully negotiate the curve, even though proceeding at a lawful speed with due care. There were no warning signs in the direction plaintiffs' car was traveling, though there were for cars traveling in the opposite direction. This is sufficient

---

[4]Government Code section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Hereafter, unless otherwise stated, all section references are to the Government Code.

[5]Section 830, subdivision (a), provides: " 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

evidence to uphold a jury finding that the uneven superelevation in the "S" curve without warning signs constituted a dangerous condition.[6]

However, the state argues that although the uneven superelevation constituted a dangerous condition on its property so as to make the state liable under section 835, nevertheless the state is immune from any such liability by virtue of section 830.6 since the uneven superelevation was part of a duly approved design or plan of the highway. Plaintiffs, on the other hand, argue that even if plans for Highway 9 were approved by the Santa Cruz Board of Supervisors, such plans did not contain any design for or mention of superelevation, and that therefore the design immunity provided for by section 830.6 is inapplicable.

■ As we recently had occasion to observe, section 830.6[7] "provides that a public entity is immune from liability for injuries caused by the plan or design of a public improvement where such plan or design has been approved in advance by the legislative body of the public entity or by some other body or employee exercising discretionary authority and where the court finds any substantial evidence on the basis of which a reasonable entity or employee could have approved the plan." (Fn. omitted.) (*Baldwin* v. *State of California* (1972) 6 Cal.3d 424, 429-430 [99 Cal.Rptr. 145, 491 P.2d 1121].)

We now turn to that portion of the judgment, which, as indicated in footnote 3, *ante,* is most accurately designated a ruling on a motion for directed verdict to the effect that the state had established as a matter of law all the elements of the defense of design immunity contained in section 830.6.

---

[6]Plaintiffs urged an alternate basis for avoiding the nonsuit and establishing a dangerous condition on Highway 9, to wit that there was a rut in the shoulder of the road. The only evidence plaintiffs could adduce to support this theory was (1) testimony that the construction of the road coupled with the location of the dirt berm *could* allow a rut to form in the shoulder of the road, and (2) a photograph taken near in time and place to the accident revealing a "Road Work Ahead" sign on Highway 9. The trial court was clearly correct in concluding that this evidence would be insufficient to support a jury finding that there was a rut in the shoulder of the road which caused the accident.

[7]Section 830.6 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

■ "The immunity of section 830.6 is an affirmative defense which must be pleaded and proved." (*Hilts* v. *County of Solano* (1968) 265 Cal.App.2d 161, 175 [71 Cal.Rptr. 275].) Accordingly we must now examine the evidence to determine whether the state has met its burden of establishing as a matter of law all the elements of the defense of design immunity contained in section 830.6.

The state introduced into evidence the design plans for the section of Highway 9 where the accident occurred. Frank Lewis, the present county surveyor stated by declaration that the plans in question had been prepared in the mid-1920's by Lloyd Bowman, the then county surveyor, at the direction of the Santa Cruz Board of Supervisors and within the scope of his employment. Copies of the minutes of meetings of the Santa Cruz Board of Supervisors were introduced to show that these plans for the improvement of the then San Lorenzo Valley Road, now Highway 9, were approved by the board. It is conceded by both parties that the Santa Cruz Board of Supervisors was the proper body to exercise the discretionary authority referred to in section 830.6. The record also contains a declaration by C. F. Greene,[8] a civil engineer employed by the state, to the effect that the design contained in the plans was in accordance with mid-1920 standards of design and was reasonable.

From the foregoing summary, it is clear that the state has presented facts sufficient to establish the initial applicability of an immunity under section 830.6. However, plaintiffs introduced evidence to show that the design plans contained no specification of superelevation; that the plans merely showed the course of the 60-foot right of way and the elevation of the white center stripe.[9] Therefore, plaintiffs urge that there is no evidence

---

[8]Although this declaration, which was filed by the state as an exhibit to its motion for summary judgment, was not made part of the record upon appeal, it was forwarded to this court in the superior court file.

[9]James Drake, an associate highway engineer for the state, called as a witness by the state, testified on direct examination:

"By MR. JOHNSON: Q . . . You have reviewed or looked at the—those design plans of 1926?

"A Yes, I've looked at a view of the sheets, the ones that concern this area.

"Q And did those particular design plans indicate any what we call super elevations on them or cross sections?

"A *No, that was an omission on the plans.* However they were super elevated and in a normal fashion." (Italics added.)

Thomas Mason, a civil engineer, called as a witness by plaintiffs, testified on direct examination:

"Q Mr. Mason, have you ever looked at any of the design plans for the design and construction of Highway 9 at this location?

"A I have some design plan, yes.

"Q And that was the ones that were—

showing that the uneven superelevation was the result of a design or plan approved by the Santa Cruz Board of Supervisors. ■ The rationale behind design immunity "is to prevent a jury from simply reweighing the same factors considered by the governmental entity which approved the design." (*Baldwin* v. *State of California, supra,* 6 Cal.3d 424, 432, fn. 7.) " '[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested.' " (4 Cal. Law Revision Com. Rep. (1963) p. 823, quoted at 67 Cal.2d at p. 153.)

■ Here the state has presented no evidence that the superelevation which was actually constructed on the curve in question in this matter was the result of or conformed to a design approved by the public entity vested with discretionary authority. Thus, there would be no reexamination of a discretionary decision in contravention of the design immunity policy because there has been no such decision proved. The state merely showed that the Santa Cruz Board of Supervisors approved a design showing the course of the right of way and the elevation above sea level of the white center stripe for the road. The design plan contained no mention of the superelevation intended or recommended. Therefore such superelevation as was constructed did not result from the design or plan introduced into evidence and there was no basis for concluding that any liability for injuries caused by this uneven superelevation was immunized by section 830.6.[10] The judgment of nonsuit must be reversed.

For the guidance of the trial court upon remand, we consider plaintiffs'

"A I believe it was 116B, sheet 18, I think, in this area, was the number on the plan.

"A They are—all they do is delineate the right-of-way and the profile, the center line of the road. They do not give you any grades or elevations other than the center line profile."

[10]Plaintiffs have also urged that design immunity would be inapplicable to this case under the authority of *Baldwin* v. *State of California, supra,* 6 Cal.3d 424. In *Baldwin* we held "that where a plan or design of a construction of, or improvement to, public property, although shown to have been reasonably approved in advance or prepared in conformity with standards previously so approved, as being safe, nevertheless in its actual operation *under changed physical conditions* produces a dangerous condition of public property and causes injury, the public entity does not retain the statutory immunity from liability conferred on it by section 830.6." (At p. 438, fn. omitted, italics added.) Plaintiffs have offered no proof whatsoever of changed physical conditions in Highway 9 since the plan was adopted. Mere passage of time is not sufficient to constitute a change in conditions. *Baldwin* is inapplicable to this matter.

second contention that, even if design immunity is eventually found to be applicable,[11] it would not immunize the state for its concurrent negligence in failing to warn of the dangerous condition.

Section 830.8[12] provides that a public entity may be liable for failure to provide warning signs if a sign was necessary to warn of a dangerous condition which would not be reasonably apparent to, and would not have been anticipated by, a person using the highway with due care. ■ As discussed earlier, plaintiffs have introduced sufficient evidence to show that a driver entering the curve in question on Highway 9 at a lawful speed and exercising due care would be unable to perceive the uneven superelevation; that this uneven superelevation would trap the driver into thinking the curve would continue to the left, while it in fact continues to the right; that the driver, too late to remedy the situation would discover himself going too fast, the weight of his car shifting and perhaps rolling over; and that warning signs, indicating the proper speed to negotiate the curve, if obeyed by the driver, would eliminate the dangerousness from the condition of uneven superelevation. The foregoing evidence is sufficient to support a finding that the state was negligent in failing to warn of the dangerous condition on Highway 9.

Plaintiffs contend that this negligent failure to warn is a concurrent cause of their injuries, that it was not the result of any design or plan which would confer immunity under section 830.6, and that, therefore, this concurrent negligence is an independent basis for recovery, even if the dangerous condition itself was created as a result of a plan covered by section 830.6. Plaintiffs rely upon *Flournoy* v. *State of California* (1969) 275 Cal. App.2d 806 [80 Cal.Rptr. 485]. In *Flournoy* the state constructed a bridge

---

[11]It is possible upon remand that the state could produce evidence to show that the superelevation was the result of a reasonable design which was approved by an appropriate body or employee vested with discretionary authority. In that event, plaintiffs' second contention would become determinative on the issue of design immunity.

[12]Section 830.8 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

The Law Revision Commission comment provides: "This section prevents the imposition of liability based on the failure to provide traffic regulatory or warning signals or devices of a type not listed in Section 830.4, but liability may exist for failure to provide such a signal or device where the condition constitutes a trap to a person using the street or highway with due care."

in such a way that water from an underpassing stream caused moisture to condense on the bridge. On cold days, the moisture would freeze on the bridge surface prior to formation of frost or ice on the approaching highway, thereby creating a dangerous icy condition. Although the state had notice of the dangerous condition, the state had not posted any signs warning of the icy condition or indicating the need for reducing speed. Plaintiffs' decedent, unaware of the icy condition of the bridge, was driving at a normal rate of speed when she lost control of her car and was killed. In the ensuing action for wrongful death, the trial court sustained the state's motion for summary judgment on the basis of the design immunity prescribed by section 830.6.

Upon appeal the court in *Flournoy* stated that although the plaintiff-heirs could be denied recovery for the state's active negligence (building the bridge) in creating a danger, they might still recover for the state's passive negligence in failing to warn of that danger. The court explained: "There may be two concurring, proximate causes of an accident. [Citations.] Although usually set in operation by different actors, these separate, concurring causes may be produced by a single defendant, who is guilty of an affirmatively negligent act and of a passively negligent omission. . . . [Par.] Here . . . the complaint alleged active and passive negligence of a single defendant (the creation of a dangerous condition and the failure to post a warning of it) as separate, concurring causes. Regardless of the availability of the active negligence theory, plaintiffs were entitled to go before a jury on the passive negligence theory, i.e., an accident caused by the state's failure to warn the public against icy danger known to it but not apparent to a reasonably careful highway user. [Citations.] [Par.] The defense argues that the plan or design immunity of section 830.6 'prevails' over any liability for a dangerous condition of public property under section 835. By force of its very terms the design immunity of section 830.6 is limited to a design-caused accident. [Citation.] It does not immunize from liability caused by negligence independent of design, even though the independent negligence is only a concurring, proximate cause of the accident." (*Flournoy v. State of California, supra,* 275 Cal.App.2d 806, 811, fn. omitted.)

In the case at bench, as in *Flournoy,* there is active negligence alleged (the creation of the dangerous condition, namely uneven superelevation) and passive negligence (failure to warn of the dangerous condition) of a single defendant, the state. Here, as in *Flournoy,* the passive negligence alleged is independent of the negligent design. ■ Agreeing with the reasoning and conclusions of *Flournoy,* we conclude that plaintiffs are

entitled to go to the jury on the passive negligence theory and that the trail court erred in granting the nonsuit.

The state urges that we reached a contrary and inconsistent result, by way of dictum, in *Becker* v. *Johnston* (1967) 67 Cal.2d 163 [60 Cal.Rptr. 485, 430 P.2d 43], pointing to the following language at page 173: "Although Mrs. Johnston argues that the original plans upon which the county relies do not mention lighting or signs warning of the Y intersection, such items, which she now complains should have been provided at some point in time prior to her accident, admittedly would serve only to lessen the hazard which she contends was created by the manner in which the intersection was designed, and for which section 830.6 extends immunity." (Fn. omitted.)

The state has entirely misconceived the thrust of that language in *Becker*. In that case, unlike the instant one, this court did not consider the issue of concurrent negligence in failing to warn of a dangerous condition, but solely concerned itself with active negligence in implementing a faulty design, to wit, construction of the intersection. In observing that warning signs, at best, would have only lessened the hazard, the court was indicating that the failure to warn was *not* an independent, concurrent negligent cause of the accident. In the instant case, if there had been proper warning of a dangerous curve and posting of the safe speed, the dangerous condition of the highway would have been effectually neutralized. The state's failure to so warn was an independent, separate concurring cause of the accident.

To recapitulate, we conclude that where the state is immune from liability for injuries caused by a dangerous condition of its property because the dangerous condition was created as a result of a plan or design which conferred immunity under section 830.6, the state may nevertheless be liable for failure to warn of this dangerous condition where the failure to warn is negligent and is an independent, separate, concurring cause of the accident.

In view of our foregoing conclusions, we need not consider plaintiffs' remaining contention that the trial judge did not properly consider the motion for nonsuit because of an alleged animosity towards plaintiffs' case.

The judgment is reversed.

Wright, C. J., Peters, J., Tobriner, J., and Mosk, J., concurred.

**BURKE, J.**—I concur with the majority to the extent they hold that the state's liability could be based upon its alleged concurrent negligence in

failing to warn of a dangerous condition. (Gov. Code, § 830.8.) I dissent, however, from the majority's determination that the state has failed to establish its design immunity under Government Code section 830.6.

The evidence showed that the Santa Cruz Board of Supervisors approved design plans which disclosed the course of the proposed road and the elevation of the white center stripe of the road. Although the plans, drafted in the 1920's, did not contain actual superelevation figures, that omission should not deprive the state of its design immunity under section 830.6. Given the curvature of the road and the elevation of its center line, the preparation of superelevation figures would appear to be a matter of mere mathematical calculation, or at least a mechanical engineering task to be performed in the normal fashion in accordance with the standards existing in the 1920's.

Indeed, the evidence in this case was that the road was superelevated in a normal and reasonable fashion, in accordance with then-existing standards. I find nothing in section 830.6 which would require that the approved plans expressly contain each and every element alleged to have contributed to a subsequent accident, in order to preserve the design immunity. It should be enough to show, as in this case, that the plans contemplated or incorporated by necessary implication normal or calculable construction or design standards. Under the circumstances in this case I think the state carried its burden of establishing its design immuntiy under section 830.6.

McComb, J., concurred.

Respondent's petition for a rehearing was denied July 5, 1972. McComb, J., and Burke, J., were of the opinion that the petition should be granted.