[No. H028124. Sixth Dist. Apr. 3, 2006.]

GARY WEINSTEIN et al., Plaintiffs and Appellants, v.
DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.

COUNSEL

Law Offices of Kenneth A. Lipson, Kenneth Alan Lipson; Law Offices of Jason A. Pollack and Jason A. Pollack for Plaintiffs and Appellants.

Bruce A. Behrens, David Gossage, Ronald W. Rogers and Kenneth G. Nellis for Defendant and Respondent.

OPINION

**MIHARA, J.**—Plaintiffs Gary Weinstein and Ryan Mitchell were injured in a cross-median collision on Highway 101 and sought to hold defendant California Department of Transportation liable for their injuries on the ground that the accident location was in a dangerous condition. Defendant obtained summary judgment based on design immunity, and plaintiffs appeal. We affirm the judgment.

## I. Background

The operative complaint is plaintiffs' second amended complaint. Plaintiffs alleged that, on December 6, 2001, a northbound vehicle crossed over the Highway 101 median .2 miles north of Burnett Avenue in the City of Morgan Hill and collided with a southbound vehicle. The driver of the northbound vehicle was killed. Plaintiffs were injured.

Plaintiffs alleged that defendant was liable under Government Code section 835, subdivision (b) for their injuries because the accident location was dangerous. They asserted that a "lane drop" occurred at that location "without warning" with "both horizontal and vertical sight distance restrictions," and "cyclone fencing" in the median was "inadequate to prevent cross-over accidents."

Defendant filed an answer in which it alleged that it was not liable for the condition of the property because it had design immunity for that condition under Government Code section 830.6.

Defendant filed a motion for summary judgment based on its design immunity defense. Defendant claimed that the following facts were undisputed: (1) Highway 101 was an essentially straight road at the accident

location with no horizontal or vertical sight restrictions; (2) the relevant state standards did not require a median barrier at that location because (a) the median was 94 feet wide at that location, and a median barrier was not required where the median was wider than 75 feet, (b) a median barrier was not required to close a median barrier gap of less than five kilometers as the gap here was larger, and (c) there was no significant history of crossover median accidents at the accident location so the accident rate did not justify a median barrier; and (3) the cyclone fencing in the median had been installed solely to prevent U-turns, not to prevent crossover median accidents.

Defendant's independent traffic engineer expert Edward J. Ruzak submitted an extensive declaration in support of defendant's summary judgment motion. The plans for this portion of Highway 101 were approved in 1982, and the roadway was completed in accordance with the plans in 1985. As planned and built, this section of Highway 101 had a five-foot-wide paved median shoulder, which was in compliance with state standards. Cyclone fencing was added in the middle of the median in 1995 as part of an approved plan aimed at eliminating the "high incidence of U-turns in [the] median." This fencing complied with the applicable state standards. A median barrier was added to the 70-foot-wide median south of the accident location in November 2000. No median barrier was placed in the 94-foot-wide median at the accident location. Vehicular traffic volume on this roadway doubled between 1980 and 2000, and, in the five-year period ending in 2000, 166 million vehicles travelled through this area (northbound and southbound). Yet there had been only one prior cross-median collision near this location prior to December 6, 2001.

South of the accident location there were three northbound lanes and a 70-foot-wide median. This section was followed by a transition area with a warning sign on the right-hand side ("LANE ENDS MERGE LEFT") and pavement arrows indicating that the number three lane was merging with the number two lane. The sign and pavement arrows met all applicable standards. The median remained 70 feet wide through the transition area. Just before the accident location, the median widened to 94 feet and remained at that width through the accident location and beyond. The roadway was essentially straight at the accident location, and there were no sight restrictions.

Plaintiffs filed opposition to the motion. They asserted that (1) there were factual disputes underlying defendant's design immunity defense, (2) defendant had lost its design immunity due to changed physical conditions, and (3) notwithstanding design immunity, defendant was liable for failing to warn motorists of the lane drop by placing a warning sign on the median side.

The only element of defendant's design immunity defense that plaintiffs disputed was the "reasonableness" element. They claimed that the design was unreasonable because it did not conform to state standards. Plaintiffs asserted that the design violated state standards in four respects: (1) The transition area was not straight but on a curve; (2) no sign appeared on the left-hand (median) side warning of the lane drop; (3) the median shoulder width was below the standard; and (4) a median barrier was required at that location due to the potential for cross-median accidents and the gap closure policy.

Plaintiffs' independent traffic engineer expert Ronald M. Shields submitted a declaration in support of their opposition. Shields asserted that a photograph of the accident location showed that the median shoulder width was less than five feet. He also declared that state standards required transition areas to be "on a straight away and not on a curvature," and the transition area near the accident location was "in the middle of a horizontal curve." Shields claimed that a median barrier was required at this location under the gap closure policy and due to a higher than average accident rate. With respect to the signage, plaintiffs relied on a standard that said "[o]n one-way roadways where the width of the median island will permit, two such signs *can be placed* facing approaching traffic, one on the right side and the other on the median island." (Italics added.)

Defendant's reply contended that plaintiffs could not base their opposition on the shoulder width because the second amended complaint had not addressed that contention. It asserted that the slight curvature in the transition area was, "according to accepted traffic engineering practice" and "State standards," "essentially a straight section." Ruzak submitted a supplemental declaration in support of defendant's reply. He asserted that the roadway "is basically straight and any curvature is so minute as to be unobservable" with "no horizontal or vertical sight restrictions." Defendant noted that the signage standard relied on by plaintiffs did not *require* a sign on the median side.

At the hearing on the motion, plaintiffs asserted that they were not required to "list each and every meticulous dangerous condition in terms of whether it was median, shoulder or signage." Plaintiffs claimed that the gap closure policy was applicable because a bridge with railings counted as a median barrier for measuring the size of the gap.

The superior court granted defendant's motion. It found that defendant had established the reasonableness of the design, plaintiffs had failed to produce substantial evidence of loss of design immunity, and the absence of a left-side sign was not independent because it was part of the design. Judgment was entered for defendant, and plaintiffs filed a timely notice of appeal.

## II. Discussion

### A. Standard of Review

"Appellate review of a ruling on a summary judgment or summary adjudication motion is de novo." (*Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 210 [77 Cal.Rptr.2d 660].) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)

The party moving for summary judgment bears "the burden of persuasion" that there are no triable issues of material fact and that the moving party is entitled to judgment as a matter of law. (*Aguilar, supra*, 25 Cal.4th at p. 850.) The moving party also "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Id.* at p. 850.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar*, at p. 851.)

### B. Existence of Design Immunity

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Gov. Code, § 835.)

"Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity . . . , if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public

employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (Gov. Code, § 830.6.)

██ "In other words, a public entity claiming design immunity must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 [109 Cal.Rptr.2d 1, 26 P.3d 332] (*Cornette*).) The existence of the third element is a legal issue for the court to decide rather than a factual issue for a jury to resolve. (*Cornette*, at p. 72.)

Plaintiffs concede that the absence of a median barrier, the width of the paved median shoulder and the horizontal alignment of the roadway were all aspects of the approved design of this portion of Highway 101. Plaintiffs claim only that no reasonable public entity could have approved these aspects of the design because they were not in compliance with the applicable state standards.

Defendant submitted evidence in support of its motion that the applicable state standards for median barriers did not require a median barrier at this location. The three possible bases for a median barrier under state standards were (1) the width of the median, (2) a high level of cross-median accidents and (3) closure of gaps of less than five kilometers. The median at this location was far too wide to justify a barrier under the width policy. Defendant's evidence indicated that there was no significant history of cross-median collisions at this location. The gap between median barriers in which this location was included was well in excess of five kilometers. Plaintiffs responded by producing evidence that there was a high general accident rate in this vicinity and that bridge railings should be counted as median barriers for purposes of the gap closure policy.

While plaintiffs' evidence suggested possible reasons for consideration of a median barrier at this location, it did not eliminate the fact that substantial evidence supported the reasonableness of defendant's decision to omit a median barrier at this location. Defendant could reasonably focus on cross-median accident rates in deciding whether a median barrier was required, and

it also could reasonably conclude that bridge railings were not the equivalent of a median barrier for purposes of the gap closure policy. The presence of substantial evidence that defendant could reasonably have decided not to have a median barrier precluded plaintiffs from succeeding on their challenge to the reasonableness element as to the absence of a median barrier.

Defendant submitted evidence that the paved median shoulder width was planned and built in compliance with the applicable state standard. Plaintiffs submitted their expert's declaration that he believed a photograph showed the width to be substandard. The presence of this factual dispute about the present width of the paved shoulder was not relevant to the reasonableness of the design. This portion of Highway 101 was designed and built with a state-standard paved median shoulder. Plaintiffs failed to show that defendant could not reasonably have approved that design or that defendant was aware that the condition of the shoulder no longer conformed to the design.

Defendant submitted substantial evidence that the horizontal alignment of the roadway was essentially straight. Plaintiffs submitted their expert's declaration that the roadway had a slight curvature. Since the as-built plans showed an essentially straight roadway at this location, defendant produced substantial evidence that it could have reasonably approved a design that included a transition area at this location.

Plaintiffs also alleged that the accident location was dangerous due to the absence of a median-side sign warning of the lane drop. Although there was not direct evidence that the specific signage was part of the approved plans for this portion of Highway 101, this was the most reasonable inference that could be drawn from the evidence. The signage was clearly installed when the roadway was originally built, and defendant produced evidence that the signage was in compliance with the applicable state standard. Design immunity extends to plans that are "in conformity with" the state's approved standards even when those plans have not been specifically approved. (Gov. Code, § 830.6.) Since defendant's showing established that the signage was planned and installed in conformity with the state's approved standards, defendant was entitled to design immunity.

There is simply no substance to plaintiffs' claim that the signage did not comply with applicable standards. The standard upon which they rely did not *require* a median-side sign; it merely *allowed* a median-side sign. As the evidence produced by defendant established that the signage conformed to the state's approved standards, substantial evidence supported the reasonableness of the signage.

## C. Loss of Design Immunity

Plaintiffs claim that defendant lost its design immunity due to changed physical conditions.

"Notwithstanding notice that constructed or improved public property may no longer be in conformity with a plan or design or a standard which reasonably could be approved by the legislative body or other body or employee, the immunity provided by this section shall continue for a reasonable period of time sufficient to permit the public entity to obtain funds for and carry out remedial work necessary to allow such public property to be in conformity with a plan or design approved by the legislative body of the public entity . . . . In the event that the public entity is unable to remedy such public property because of practical impossibility or lack of sufficient funds, the immunity provided by this section shall remain so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of the condition not conforming to the approved plan or design or to the approved standard." (Gov. Code, § 830.6.)

■ "[T]o demonstrate loss of design immunity a plaintiff must also establish three elements: (1) the plan or design has become dangerous because of a change in physical conditions; (2) the public entity had actual or constructive notice of the dangerous condition thus created; and (3) the public entity had a reasonable time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity, unable to remedy the condition due to practical impossibility or lack of funds, had not reasonably attempted to provide adequate warnings." (*Cornette, supra*, 26 Cal.4th at pp. 66, 72.)

While defendant bore the burden of establishing each element of its design immunity defense in support of its summary judgment motion, once defendant established its immunity, plaintiffs bore the burden of producing substantial evidence of a loss of design immunity. (*Mirzada v. Department of Transportation* (2003) 111 Cal.App.4th 802, 807 [4 Cal.Rptr.3d 205].) Thus, plaintiffs had the burden of producing substantial evidence that the design of the roadway at the accident location had become dangerous due to changed physical conditions.

Plaintiffs did not meet this burden. Their showing relied on the increase in traffic at the accident location and a corresponding increase in accidents. However, plaintiffs failed to produce evidence that either statistic made the condition of the roadway at the accident location inconsistent with state standards or would have rendered it unreasonable for a public entity to approve the design of the roadway. As we have already noted, defendant

produced evidence that there was no significant history of cross-median accidents at the accident location, and increased traffic alone does not cause a roadway to "no longer be in conformity with" its design or state standards unless a change in traffic volume changes the state standards that apply. Plaintiffs produced no evidence that increased traffic volume alone mandated a median barrier under the applicable state standards, and they otherwise failed to support their claim of loss of design immunity with evidence that changed conditions had caused the accident location to become dangerous.

### D. Failure to Warn

Plaintiffs' final contention is that defendant's design immunity defense did not bar them from recovering for defendant's failure to post a median-side warning sign.

■ The second amended complaint premised liability solely on defendant's liability for a "dangerous condition" under Government Code section 835, subdivision (b). A public entity cannot be held liable for "an injury caused by the failure to provide traffic or warning . . . signs . . . [unless a sign is] necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (Gov. Code, § 830.8.) Thus the simple absence of a warning sign cannot create liability unless there is a hidden dangerous condition.

Here, plaintiffs claimed that a sign warning of the lane drop was needed due to the dangerous nature of the lane drop: the absence of a median barrier, the horizontal alignment of the roadway and the width of the paved shoulder. But defendant was entitled to immunity for each of these aspects of the roadway's design. "It would be illogical to hold that a public entity immune from liability because the design was deemed reasonably adoptable, could then be held liable for failing to warn that the design was dangerous." (*Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 600 [15 Cal.Rptr.2d 660].) Since defendant could not be held liable for these aspects of the roadway's design as dangerous conditions, it could not be held liable for failing to warn of these same aspects.

Plaintiffs' reliance on *Cameron v. State of California* (1972) 7 Cal.3d 318 [102 Cal.Rptr. 305, 497 P.2d 777] is misplaced. *Cameron* involved the failure to warn of a hidden dangerous condition that was not part of the approved design of the highway. (*Cameron*, at pp. 326–327.) Here, plaintiffs claim that defendant was obligated to warn of conditions that *were* part of the approved design. The superior court did not err in granting defendant's summary judgment motion.

## III. Disposition

The judgment is affirmed.

Rushing, P. J., and McAdams, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 19, 2006, S144231.