Filed 6/27/24  P. v. Ciceu CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C097900 |
| Plaintiff and Respondent, | (Super. Ct. No. 22F1165) |
| v. | |
| BRYON DAVID CICEU, | |
| Defendant and Appellant. | |

A jury convicted defendant Bryon David Ciceu of multiple acts of domestic violence that occurred over the course of two days.  At sentencing, the trial court imposed an aggregate term of 17 years 4 months for charges including first degree burglary, corporal injury, criminal threats, assault with a deadly weapon, false imprisonment, and misdemeanor vandalism.  The trial court stayed three prior serious felony conviction enhancements.

1

On appeal, defendant contends that the trial court was required to stay some of the terms pursuant to Penal Code[1] section 654. Defendant further argues that the trial court was permitted to impose or strike the punishment for the enhancements but could not stay them. We agree that the trial court should have stayed either the term for first degree burglary or the term for corporal injury that occurred on the first day. We also agree, as the People concede, that the trial court was required to either strike or impose the enhancements. Consistent with these conclusions, we will vacate the sentence and remand for a full resentencing hearing. To assist the trial court and the parties, we shall address the remaining sentencing issues.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and K.O. were in an off-and-on relationship for over 10 years, which K.O. described as "toxic." On July 1, 2022, defendant's truck broke down at K.O.'s house and she wanted him to leave, so she planned to take him to the auto parts store so he could charge his car battery. K.O. did not feel comfortable letting defendant stay in her home while she was not there, as he had damaged some of K.O.'s things in the past. While they were putting defendant's car battery into K.O.'s car to take to the store, K.O. noticed that some of her pictures had been moved. When K.O. asked defendant about the pictures, he became agitated and angry and called her a "bitch." K.O. told defendant that if he was going to call her a "bitch," she was not going to take him to the auto parts store.

Hoping to give defendant a chance to calm down and change his attitude, K.O. went to her porch and sat down. But defendant stayed angry and called her derogatory names for approximately 15 to 20 minutes. At some point, K.O. did not want to listen to him anymore so she went into her house through the front door and locked it. Then, defendant broke down the back door and came into the house. K.O. was sitting on the couch, and defendant immediately walked up to her, leaned over her, grabbed her by her hair and throat, and

---

[1] Undesignated statutory references are to the Penal Code.

2

shook her head.  K.O. tried to stay calm so that defendant would calm down.  Eventually, he let go of her.  But, when K.O. tried to leave, defendant took her purse and blocked her path. Defendant is approximately six inches taller than K.O.

K.O. repeatedly asked defendant to leave but he did not.  When defendant put the purse back on the couch and walked into the kitchen, K.O. grabbed her purse and got into her car that was parked on the driveway.  Defendant followed her, yelled at her, and called her derogatory names.  She locked the door and fell asleep for a while.  K.O. woke up again when defendant walked up to the car and yelled at her to come back into the house.  While defendant was yelling, he broke a car mirror off her car.  Defendant told K.O. that he would stab her in the throat.  K.O. did not believe that he would stab her because there was a glass window between them and he did not have a knife in his hand.  Because K.O. did not want to stay and listen to defendant yelling at her anymore, she drove to her friend's house and spent the rest of the night there.

The next morning, K.O. drove back to her house.  When K.O. came into the house, defendant sat on the couch in the living room.  He had a knife in his hand and stabbed her couch once and rug twice with it.  K.O. told defendant that she would give him another chance and take him to the auto parts store before she went to work in the afternoon. Defendant refused her offer.  K.O. told defendant that he had to figure out what to do because she was going to work that day.  This made defendant very angry.  Defendant stood up, walked up to K.O., and held the knife to her throat.  K.O. testified that defendant told her, "[Y]ou don't need to tell me what I need to do.  You need to figure out what you're going to do."  In an interview with a police officer, K.O. reported that defendant told her, "You're done bitch.  I'm going to fuck you up."

K.O. felt a prick from the knife, which left a mark in her neck.  She stood still and defendant stopped holding the knife to her throat.  K.O. sat down and waited until defendant seemed calm.  After defendant appeared to have calmed down for a while, K.O. tried to walk toward the door but defendant stepped in front of her.  K.O. asked defendant to move.

3

Defendant was still very angry, stood over her with a "puffed-out chest," and refused to let her pass.  Before she sat back down, K.O. asked defendant to move again but defendant once again refused.  When defendant walked toward the kitchen, K.O. left the house as quickly as she could.  Then, K.O. went to work and called the police.

At trial, the People presented evidence that defendant committed five prior acts of domestic violence against K.O.  In December 2014, K.O. and defendant were in a "heated argument."  Defendant tried to stop K.O. from leaving.  When she tried to rush past him, defendant grabbed her by the neck and said he was trying to talk to her.  In December 2015, defendant burst into her bedroom, accused her of putting glass in his food, and grabbed her by the throat.  In May 2018, defendant and K.O. got into another argument.  Defendant stood over her and moved like he was going to stomp on her or kick her.  In October 2018, defendant was suspicious that K.O. was texting someone else.  Defendant held her cellphone over his head, and K.O. tried to take it back.  During the struggle, defendant struck K.O. under her left eye and scraped her leg with pliers.  In September 2021, K.O. came home and saw defendant inside.  K.O. told him to leave but he refused and called her derogatory names.  Then, he threw something at her, stabbed her bed with a knife, and jumped on top of her and held the knife to her neck.

A jury found defendant guilty of committing first degree burglary by entering K.O.'s house (§§ 459/460, subd. (a); count 1), corporal injury to a cohabitant or person in a dating relationship (§ 273.5, subd. (a); count 2), and misdemeanor vandalism (§ 594, subd. (b)(2)(A); count 8) on or about July 1, 2022; making criminal threats (§ 422, count 3) and false imprisonment by violence or menace (§ 236, count 6) sometime between July 1, 2022, and July 2, 2022[2]; and assault with a deadly weapon (§ 245, subd. (a)(1); count 4) and

---

[2]  The trial court instructed the jury with CALCRIM No. 3500 as to both the charges for criminal threats (count 3) and false imprisonment (count 6).  In relevant part, the instructions stated, "The People have presented evidence of more than one act to prove that the defendant committed this offense.  You must not find the defendant guilty of this

4

corporal injury to a cohabitant or person in a dating relationship (§ 273.5, subd. (a); count 5). A jury also found true the following special allegations as to all the counts except misdemeanor vandalism (count 8): the crime involved great violence (Cal. Rules of Court,[3] rule 4.421(a)(1)); the victim was vulnerable (rule 4.421(a)(3)); and defendant took advantage of a position of trust (rule 4.421(a)(11)). A jury found true the special allegation that defendant was armed with or used a weapon as to the count for criminal threats (count 3) and the count for corporal injury (count 5).

During bifurcated proceedings, the jury found true that defendant suffered a prior strike (§ 1170.12) for assault with a deadly weapon in February 2003 as to all felony counts. The jury found true that defendant suffered a prior serious felony conviction (§ 667, subd. (a)(1)) for the same assault as to the counts for first degree burglary, criminal threats, and assault with a deadly weapon. The jury also found true the following special allegations as to all felony counts: defendant's prior convictions as an adult are numerous and of increasing seriousness (rule 4.421(b)(2)), defendant served a prior prison term (rule 4.421(b)(3)), and defendant performed unsatisfactorily on probation or parole (rule 4.421(b)(5)).

In its sentencing brief, the People argued that only the term for count 5 (corporal injury occurring on or about July 2, 2022), should be stayed pursuant to section 654. The People asserted that there were "six distinct stages" of defendant's attack on K.O. Further, each was a "separate and distinct act with a separate and distinct objective." First, defendant committed first degree burglary with the intent to assault her on July 1. Second, he assaulted her on July 1. Third, he tried to stop K.O. from leaving on July 1. Fourth, his

---

offense, or the lesser included offense . . . unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed." The verdict forms did not indicate that the jury was required to specify on which day it unanimously found defendant committed either charge.

**3** Undesignated rule references are to the California Rules of Court.

5

statement to her on July 1 that he was going to put a knife to her throat or his statement to her on July 2, "We're done bitch, I'm gonna fuck you up, bitch!" Fifth, he held a knife to her throat on July 2. Sixth, he stopped her when she tried to leave the house on July 2. The objective of the false imprisonment was to prevent K.O. from leaving, while the objective of the other acts was to terrorize, assault, and punish her. The People argued that the only two offenses that arose from the same act, at the same time, and with the same intent were the corporal injury and the assault with a deadly weapon that occurred on July 2. Both acts arose from defendant grabbing K.O. by the hair and holding a knife to her throat.

Defendant filed a *Romero*[4] motion inviting the trial court to strike his prior strike conviction and to dismiss the prior serious felony conviction enhancements. Specifically, defendant argued that his prior strike conviction was remote in time and that his background, character, and prospects placed him outside the spirit of the three strikes law. Defendant further asserted that three mitigating factors pursuant to section 1385 weighed in favor of dismissing the enhancements: 1) multiple enhancements were alleged in a single case (§ 1385, subd. (c)(2)(B)); 2) imposition of the enhancements could result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)); and 3) the enhancements were based on a prior conviction that was over five years old (§ 1385, subd. (c)(2)(H)).

At sentencing, the trial court declined to strike the prior strike conviction. The trial court reasoned that since "the enhancements under [section 667] are also based on the same conviction which is the subject of the [prior strike]," it would stay the prior serious felony conviction enhancements. The trial court also explained, "this wasn't one set of operative facts or one course of conduct. There were significant breaks in time between the acts that -- that were the basis of the offenses, including where the victim stayed in her car for a considerable time period, and then another considerable time period where she left and went to sleep at a friend's house."

---

[4] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

The trial court sentenced defendant to an aggregate term of 17 years 4 months, comprised of:  the upper term of six years for first degree burglary (count 1), doubled to 12 years for the prior strike; a consecutive term of one year (one-third the midterm) for corporal injury on or about July 1, 2022, (count 2) doubled to two years for the prior strike; a concurrent term of the midterm of two years for criminal threats (count 3), doubled to four years; a consecutive term of one year (one-third the midterm) for assault with a deadly weapon (count 4), doubled to two years for the prior strike; a consecutive term of eight months (one-third the midterm) for false imprisonment by violence or menace (count 6), doubled to 16 months for the prior strike; and a concurrent term of six months for misdemeanor vandalism (count 8).  Pursuant to section 654, the trial court stayed the sentence for corporal injury on or about July 2, 2022 (count 5).

## DISCUSSION

## I

## Section 654

Defendant contends that the trial court was required to stay the following terms pursuant to section 654:  corporal injury that occurred on or about July 1 (count 2) because of the burglary (count 1) term; criminal threats that occurred on or about July 2 (count 3) because of the assault with a deadly weapon (count 4) term; and false imprisonment that occurred on or about July 2 (count 6) because of the assault with a deadly weapon term (count 4).

### A.  Legal Background and Standard of Review

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct."  (*People v. Hester* (2000) 22 Cal.4th 290, 294.)  A course of conduct is indivisible "where the defendant ' "harbored a single intent." ' "  (*People v. Mesa* (2012) 54 Cal.4th 191, 199.)  So "if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once."  (*People v. Harrison* (1989) 48

7

Cal.3d 321, 335.) But if the "defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid.*) Further, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935; *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1255.) Moreover, "[w]hen a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129 (*Islas*).)

The law gives the trial court "broad latitude" in determining whether section 654 prevents multiple punishment. (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.) We review the trial court's findings for substantial evidence " 'in a light most favorable to the judgment,' " meaning we " 'presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence.' " (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.)

### B. Burglary and Corporal Injury

Defendant asserts that because the conviction for burglary (count 1) relied on the intent to commit corporal injury on July 1 (count 2), he could not be sentenced for both convictions. The People respond that the trial court instructed the jury that other offenses could have been the intent underlying the burglary. The People alternatively argue that because there was time for defendant to reflect between the burglary and corporal injury, punishments for both burglary and corporal injury were appropriate.

8

### 1. Additional Background

The trial court instructed the jury that to find defendant guilty of first degree burglary, it must find that he entered K.O.'s house with the intent to commit either corporal injury, assault with a deadly weapon, or criminal threats. During closing argument, the People argued that the jury should find the intent underlying the burglary was to commit the corporal injury. The People contended that it was "easiest" for the jury to find corporal injury was the intent, because defendant "busted through her door, and then he went straight to her, and he grabbed her by the hair and the throat." The prosecutor argued the intent of the burglary "was to attack her. It was to do what he did. To grab her by the hair and throat, shake her, force her to comply." The prosecutor did not argue that any other felony was the intent underlying the burglary. The jury verdict did not specify which felony it found was the underlying intent of the burglary.

### 2. Analysis

As an initial matter, we disagree with the People's argument that the jury could have found defendant committed burglary on July 1 with the intent of committing either corporal injury, assault with a deadly weapon, or criminal threats. Both the criminal threats and assault with a deadly weapon occurred a considerable time after he committed burglary and corporal injury on July 1. Defendant made the July 1 criminal threats after K.O. left the house and fell asleep in her car, and he assaulted her with a deadly weapon the following morning on July 2. Corporal injury is the only felony that occurred soon after defendant broke into the house and before any significant break in time. In fact, after defendant broke into the house through the back door, he immediately walked up to K.O. and grabbed her by her hair and throat. This likely is why the prosecutor specifically argued that defendant broke in to "attack" K.O. Thus, corporal injury is the only offense that could underlie the burglary.

Generally, "[w]hen a defendant is convicted of burglary and the intended felony underlying the burglary, section 654 prohibits punishment for both crimes." (*Islas*, *supra*,

9

210 Cal.App.4th at 130.) The People do not cite to any authority that states defendant may be punished for both the burglary and the intended felony underlying that burglary if the defendant had the opportunity to reflect between the two offenses. We therefore apply the general rule that the trial court cannot impose punishment for both the burglary and the felony underlying the intent of the burglary. Thus, the trial court erred in failing to apply section 654 to stay either the term for burglary or the term for corporal injury.

Effective January 1, 2022, Assembly Bill No. 518 (2021-2022 Reg. Sess.) amended section 654, subdivision (a) to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." (§ 654, subd. (a); Stats. 2021, ch. 441, § 1.) Thus, under amended section 654, a trial court now has the discretion to punish the defendant under any of the applicable laws. Consequently, we remand the matter for a full resentencing hearing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.) In doing so, we express no opinion about how the trial court should exercise its discretion. To assist the trial court and the parties on remand, we shall address the remaining sentencing issues.

### C. Criminal Threats and Assault with a Deadly Weapon

Next, defendant argues that the offenses alleging criminal threats (count 3) and assault with a deadly weapon (count 4) were part of a continuous course of conduct of domestic violence and shared the same objective of defendant controlling and intimidating K.O. Initially, we observe that defendant's actions on either July 1 or July 2 arguably could have served as the basis of the criminal threats conviction, and the jury was not required to specify on the verdict form the actions that it agreed formed the basis for that count. (See CALCRIM No. 3500.) However, defendant did not have a knife in his hand when he threatened to stab K.O. in the throat on July 1. By contrast, on July 2, defendant held a knife to K.O.'s throat while threatening, "You're done bitch. I'm going to fuck you up." As a result, the jury necessarily found that defendant committed criminal threats on July 2 because it found true the aggravating circumstance that defendant was armed with or used a weapon during the commission of the criminal threats.

10

When viewed in the light most favorable to the judgment, "[s]ubstantial evidence supports the [trial] court's implicit finding that [defendant] acted with separate objectives when he assaulted and then threatened [K.O]." (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 95.) "That is, the [trial] court could reasonably have found that [defendant] committed the assault with the objective of inflicting *physical* harm on [K.O.], whereas [defendant] criminally threatened [K.O.] with the separate objective of inflicting *mental or emotional* harm." (*Ibid*.) Defendant demonstrated an intent to physically harm K.O. when he pressed his knife into her neck hard enough to leave a mark. Just because defendant did not gravely injure K.O. does not mean he did not intend to physically harm her. Then, defendant inflicted emotional harm by telling K.O. that he was going to "fuck [her] up." Because the trial court could reasonably conclude defendant carried out two separate acts with two separate objectives, we conclude the trial court did not err in finding multiple punishments were appropriate.

### D. *False Imprisonment and Assault with a Deadly Weapon*

Defendant further argues that because the use of a knife established both the assault with a deadly weapon (count 4) and the element of menace for false imprisonment on July 2 (count 6), the trial court could not impose two punishments for the same act. The People respond that the jury could have "reasonably concluded" that defendant committed false imprisonment on July 1, but that even if the jury found defendant committed false imprisonment on July 2, he still had an opportunity to reflect between the two offenses.

During closing argument, the People argued that there was evidence defendant committed false imprisonment by stopping K.O. from leaving her house on both July 1 and July 2. The People asserted that the jury could find defendant guilty of false imprisonment by concluding he committed false imprisonment on either or both days. The prosecutor then said, "I'm asking you to find him guilty of him doing this on July 2nd. Because on July 2nd, all of the events that had happened on July 1st and July 2nd came into play to be called

11

menace." The jury's verdict did not indicate the day on which it found defendant committed false imprisonment.

To find defendant guilty of false imprisonment by violence or menace, the jury needed to find that: 1) defendant intentionally confined or detained K.O. or caused K.O. to be confined or detained by violence or menace; and 2) defendant made K.O. stay or go somewhere against her will. (CALCRIM No. 1240.) The jury instructions defined "menace" as "a verbal or physical threat of harm, including use of a deadly weapon." (*Ibid*.) Further, "the threat of harm may be express or implied." (*Ibid*.)

A finding of false imprisonment by menace does not require "[a]n express threat or use of a deadly weapon." (*Islas*, *supra*, 210 Cal.App.4th at p. 125.) "Threats can be exhibited in a myriad number of ways, verbally and by conduct." (*Id*. at p. 126.) Further, "a jury properly may consider a victim's fear in determining whether the defendant expressly or impliedly threatened harm." (*Id*. at p. 127.)

When K.O. first tried to leave her house on July 1, defendant took her purse and blocked her path. After defendant held a knife to her throat on July 2, K.O. tried to leave again. Defendant stepped in front of her, stood over her with a "puffed-out chest," and refused to let her pass. While there were two acts, on two different dates, that could have served as the basis for the false imprisonment conviction, the prosecutor elected the July 2 date and defendant's briefing seems to agree that July 2 is the relevant date. Had the jury found that defendant committed false imprisonment the day before he held a knife to K.O.'s throat, i.e. July 1, defendant's argument that his use of a knife also established the menace element for false imprisonment would fail. And even if the jury found defendant committed false imprisonment on July 2, substantial evidence supports the trial court's implied finding that defendant's actions, other than holding a knife to K.O.'s throat, satisfied the menace element of false imprisonment. When K.O. returned to her house, defendant stabbed her rug and couch with a knife. In addition, defendant was approximately six inches taller than K.O. and stood over her with his chest "puffed" when she tried to leave. K.O. repeatedly

12

asked defendant to let her leave and he refused. Afraid that defendant's behavior would escalate, and he would become more violent, K.O. did not insist on leaving. The trial court could have reasonably concluded that the acts of stabbing her household items, standing over her, puffing out his chest, and refusing to step aside implied the threat of harm. As a result, the trial court did not necessarily rely on defendant holding the knife to K.O's throat to satisfy the menace element.

Further, substantial evidence supports the trial court's implied finding that defendant harbored different objectives when he committed assault with a deadly weapon and false imprisonment. As we have already discussed, defendant committed assault with a deadly weapon with the intent to cause physical harm to K.O. Viewed in the light most favorable to the judgment, the record reflects that defendant falsely imprisoned K.O. to exercise control over her. Defendant became enraged again when K.O. told him that she was going to work. K.O. had successfully fled the house the night before, and defendant apparently did not want her to feel empowered to leave again. After defendant stopped holding the knife to K.O.'s throat, she sat down and waited for him to calm down. When she felt he had calmed down, she stood up again and walked toward the door. Defendant had the opportunity to reflect and let her leave. Instead, he chose to confront K.O. again and stepped in front of her. Based on these facts, we conclude there is substantial evidence that defendant had the opportunity to reflect in between committing assault with a deadly weapon and false imprisonment. As a result, the trial court did not err in imposing punishments for both the assault and the false imprisonment.

## II

### *Prior Serious Felony Conviction Enhancements*

Defendant contends that the trial court was authorized to strike or dismiss but could not stay the three prior serious felony conviction enhancements. The People concede that the trial court had discretion to strike the enhancements, but not to impose and stay them. We agree that striking or imposing the enhancement is the extent of the trial court's

13

discretion.  (*People v. Langston* (2004) 33 Cal.4th 1237, 1241; *People v. Haykel* (2002) 96 Cal.App.4th 146, 151; *People v. Eberhardt* (1986) 186 Cal.App.3d 1112, 1122-1124.) Failing "to impose or strike an enhancement is a legally unauthorized sentence subject to correction for the first time on appeal."  (*People v. Bradley* (1998) 64 Cal.App.4th 386, 391.)  Given that we are remanding for a full resentencing hearing under section 654, we leave it to the trial court to decide whether to strike or impose the three prior serious felony conviction enhancements.

## DISPOSITION

The convictions are affirmed.  The sentence is vacated, and the matter is remanded for a full resentencing hearing consistent with section 654.


/s/
Wiseman, J.*


We concur:


/s/
Duarte, Acting P. J.


/s/
Mesiwala, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.