Filed 12/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KEVYN MENGES, an Incompetent Person, etc.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>DEPARTMENT OF TRANSPORTATION,<br><br>    Defendant and Respondent. | G057643 consol. w/ G058148<br><br>(Super. Ct. No. 30-2012-00566882)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Craig L. Griffin, Judge.  Affirmed.

Cornelius P. Bahan for Plaintiff and Appellant.

Jeanne Scherer, Acting Chief Counsel, Jeffrey R. Benowitz, Deputy Chief Counsel, Glenn B. Mueller and John Frederick Smith, Assistant Chiefs Counsel, Emily D. W. Sweet and Patrick R. Boyne, Deputy Attorneys for Defendant and Respondent.

Kevyn Menges suffered catastrophic injuries in a motor vehicle accident. Menges, through her guardian ad litem Susan Menges, sued the Department of Transportation (Caltrans) for its negligent construction of an interstate off-ramp. Caltrans moved for summary judgment, asserting design immunity. The trial court granted Caltrans's motion for summary judgment. On appeal, Menges asserts the court erred because design immunity should not apply since the approved design plans were unreasonable, and the construction of the interstate off-ramp did not match the previously approved design plans. She also urges reversal because the court denied her oral request for a continuance at the summary judgment hearing. Finally, she challenges the court's award of costs, arguing Caltrans's Code of Civil Procedure section 998 offer was unreasonable and invalid, and a portion of the cost award for expert witness fees should have been disallowed. None of Menges's arguments have merit, and we affirm the judgment.

FACTS

I. *Accident*

On February 6, 2012, at approximately 10:40 in the morning, Menges was a passenger in a friend's car, headed home to San Clemente. It was daylight, the weather was clear, the pavement was dry, and conditions were normal. The women were waiting for the green light to start a left-hand turn from westbound Avenida Pico onto the on-ramp to southbound Interstate 5 (I-5 freeway). After the light turned green and they began their left turn, truck driver Gerald Pesicka struck them broadside with in his tractor-trailer truck.

The truck was traveling in the number four lane on the I-5 freeway when it took the Avenida Pico exit at 55-60 miles per hour. [1] A witness driving behind the truck

---

[1] The trial court provided this helpful description: "The I-5 is five-lanes in that section with the two right lanes having access to the off-ramp. The far right lane that ends in the off-ramp, and the second lane from the right splits so that a driver can either

did not see any brake lights as it continued down the quarter-mile long off-ramp. Pesicka passed another vehicle halfway down the off-ramp. That witness saw the truck swerve to the left, straddle a curb, and then sideswipe a vehicle stopped at the bottom of the off-ramp waiting to turn. The truck then crashed through a light standard, traveled into the intersection, and broadsided the car carrying Menges and several other vehicles. A witness watched the accident and reported, "he didn't hear any horns, down shifting, nor did he hear any skidding or screeching as [the truck] continued down the ramp."

At the scene, Pesicka denied any recollection of the accident or the moments leading up to it. He told the California Highway Patrol officer interviewing him he was headed to Oceanside to pick up a load of cargo and had no reason to exit the freeway at Avenida Pico. Pesicka's drug and alcohol tests were negative. Pesicka suffered a major stroke a day later, was hospitalized for emergency surgery, and ultimately died after he was discharged.

II. *Lawsuit and Procedural History*

On May 4, 2012, Menges's guardian ad litem filed suit against Pesicka and others, eventually naming Caltrans. As to Caltrans, Menges asserted her injuries resulted from a dangerous condition of public property. She contended "confusing" and "deceiving" pavement striping, signage on the I-5 freeway at the top of the Avenida Pico off-ramp, and striping of the city street intersection at the bottom, caused the accident. She further alleged the striping and signage issues caused Pesicka to "mistakenly and unintentionally" exit the I-5 freeway and career down the off-ramp, leading to Menges's significant injuries.

---

drive down the off-ramp or continue southbound on the I-5. The off-ramp is approximately 1/4–mile long from the freeway to a stoplight at the end, and has a decline that allows a vehicle at the stoplight to make a left turn under the freeway. The off-ramp splits from two into three lanes as it moves closer to the stoplight."

3

III. *Caltrans's Motion for Summary Judgment*

In July 2018, Caltrans moved for summary judgment based on the statutory design immunity defense. It provided evidence the last improvement project at I-5 and Avenida Pico was completed on September 10, 2008. That project was confirmed to have been built in compliance with a set of Caltrans design plans approved for use in September 2005. The project included new pavement delineation, signage elements including the Avenida Pico off-ramp overhead sign and a "Must Exit" sign, and gore point markings and lane striping on the road at the top and base of the off-ramp.

In support of its motion, Caltrans submitted the declaration of Ronald Nelson, a traffic engineer expert witness, who opined as to the reasonableness of the design and construction of I-5 at Avenida Pico. Menges opposed the motion and submitted declarations from two of her own civil engineers critical of the design, Brad Avrit and Edward Ruzak, and which Caltrans objected to.

Nelson submitted a reply declaration to rebut a new claim raised by Menges that the 2008 project had not been constructed in accordance with the 2005 design plans. Avrit, then submitted a supplemental declaration, which Caltrans also objected to.

The trial court granted Caltrans's motion for summary judgment. It determined design immunity applied because substantial evidence supported the reasonableness of the design and Menges failed to establish the project was not built according to plans.

Subsequently, Caltrans submitted a memorandum of costs, seeking to recover $66,218.74. A portion of these costs was for expert witness fees accruing after Menges rejected an April 23, 2014, $25,000 settlement offer from Caltrans, made pursuant to Code of Civil Procedure section 998 (998 offer).[2] The court determined the 998 offer was valid, and ultimately awarded Caltrans $42,926.05 in expert witness fees.

---

[2] All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

4

This amount included $14,907.30 for Elevate Services to analyze Menges's medical records in anticipation of testimony regarding reasonableness of treatment, insurance adjustments, and damages, as well as $9,608.75 for expert witness Mary Jesko, retained to testify about Menges's life care plan.

The court entered an amended judgment reflecting its cost award. We consolidated Menges's appeals from the grant of summary judgment and the cost award.

DISCUSSION

Menges contends the trial court erred by determining Caltrans was entitled to summary judgment based upon design immunity. Specifically, she asserts the doctrine should not apply because the design of the freeway off-ramp was unreasonable, and Caltrans failed to follow the as-built plans. The court did not err.

I. *Standard of Review and Pertinent Law*

A grant of summary judgment is reviewed de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476.) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, fn. omitted.) The moving party also "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he [or she] carries his [or her] burden of production, he [or she] causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid*.)

"'[T]he normal rules governing a motion for summary judgment, and requiring its denial if any triable issue of fact appears, are not fully applicable [to cases involving design immunity under Government Code section 830.6.] For example, the defendant is not required to prove to the court that the design or plan was in fact a

5

reasonable one. Instead, the defendant is merely required to adduce any "substantial evidence" that a reasonable public employee or legislative body could have approved the plan or design used under [Government Code section] 830.6. Thus, when the defendant files a motion for summary judgment, the existence of a possible conflict of evidence, as shown by the proof submitted on the motion, will not create a triable issue on this aspect of the defense that can defeat a summary judgment . . . .' [Citation.]" (*Wyckoff v. State of California* (2001) 90 Cal.App.4th 45, 50-51 (*Wyckoff*).) "We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted. [Citations.]" (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939-940 (*Grenier*).) "That a plaintiff's expert may disagree does not create a triable issue of fact." (*Id.* at p. 941.)[3]

A court's denial of an oral request to continue a summary judgment hearing is reviewed for abuse of discretion. (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1428 (*Park*).) The validity of Caltrans's 998 offer to compromise is subject to de novo review. (*Prince v. Invensure Ins. Brokers, Inc.* (2018) 23 Cal.App.5th 614, 622.) However, the actual award and the reasonableness of the offer are reviewed for abuse of discretion. (*Melendrez v. Ameron Internat. Corp.* (2015) 240 Cal.App.4th 632, 647.)

II. *Summary Judgment Analysis*

Menges raises two challenges to the trial court's grant of summary judgment. She asserts her own experts' testimony, which established the design was "unreasonable," precluded the application of design immunity. She also contends design immunity should not apply because Caltrans did not construct the off-ramp in conformance with the design plans. Her arguments lack merit.

---

[3]     Menges's briefing on appeal omits this legal standard applicable to design immunity cases entirely, focusing only on a traditional summary judgment analysis.

6

A public entity may be liable for personal injuries caused by the "dangerous condition" of its property. (Gov. Code, §§ 830, 835.) An entity may avoid liability, however, through the affirmative defense of the design immunity. (Gov. Code, § 830.6.) "A public entity claiming design immunity must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design. [Citations.]"[4] (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66.)

"Any substantial evidence" to support the third element of design immunity is "evidence of solid value and which reasonably inspires confidence. [Citation.]" (*Grenier*, *supra*, 57 Cal.App.4th at p. 939.) "'[A]s long as reasonable minds can differ concerning whether a design should have been approved, then the governmental entity must be granted immunity. The statute does not require that property be perfectly designed, only that it be given a design which is reasonable under the circumstances.' [Citation.]" (*Id.* at p. 941.) "We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted." (*Id.* at p. 940.) Furthermore, "That a plaintiff's expert may disagree does not create a triable issue of fact. [Citations.]" (*Id.* at p. 941.)

A. *Reasonableness of the Design*

Menges first asserts Caltrans failed to carry its burden of establishing the design immunity defense. She asserts that because her experts disagreed with Caltrans's expert there was no substantial evidence supporting the reasonableness of the design. Not so.

---

[4]     The trial court determined, and Menges concedes, Caltrans established the first two elements of the statutory design immunity.

As discussed previously, a case involving design immunity does not function as a typical summary judgment case would. The court's role in evaluating the third element of the design immunity is not to provide a de novo interpretation of the design, but instead to decide whether there is "any substantial evidence" supporting its reasonableness. (*Ramirez v. City of Redondo Beach* (1987) 192 Cal.App.3d 515, 525-526 (*Ramirez*).) "Any substantial evidence" to establish this third element of the immunity may consist of the following: Discretionary approval of the design plans themselves (*Grenier*, *supra*, 57 Cal.App.4th at pp. 941-942); the expert opinion of a civil engineer as to the reasonableness of the design (*id.* at p. 941); or evidence the design or plan complies with prevailing professional standards (*Weinstein v. Department of Transportation* (2006) 139 Cal.App.4th 52, 59 (*Weinstein*)). "A mere conflict in the testimony of expert witnesses provides no justification for the matter to go to a lay jury who will then second-guess the judgment of skilled public officials. [Citation.]" (*Ramirez*, *supra*, 192 Cal.App.3d at pp. 525-526.)

Menges, apparently ignoring the proper standard, asks us to consider evidence of how the off-ramp looked and testimony from her expert witnesses to determine whether the design was reasonable. However, given our standard of review in this specific scenario, we are unable to interpret that evidence de novo. Indeed, as detailed below, Caltrans provided substantial evidence to support discretionary approval of the design plans, an expert opinion as to the reasonableness of the design, and evidence the design complied with California's approved standards.

Caltrans provided evidence demonstrating Mostafa Aliakbarzadeh, as the Caltrans civil engineer responsible for the engineering design work on the Project, exercised his discretionary authority to approve the relevant pavement delineation and signage plans in advance of construction. Aliakbarzadeh's 2005 approval of the relevant design plans alone is sufficient to establish the third element of the design immunity. (*Grenier*, *supra*, 57 Cal.App.4th at pp. 941-942.)

8

Caltrans' expert witness Nelson reviewed several items to form his analysis, including the operative complaint, the traffic collision report and photographs prepared by the California Highway Patrol, discovery responses, a land survey, the as-built design plans, and the version of the California Manual on Uniform Traffic Control Devices (MUTCD)[5] in effect at the time the plans were completed. He also conducted a site inspection. Nelson concluded the design plans for the construction of the improvements that were in place at the time of this accident were done with reasonable professional engineering judgment in design and construction, including compliance with the relevant portions of the MUTCD. Nelson's expert opinion was further evidence establishing the third element of the statutory design immunity. (*Grenier*, *supra*, 57 Cal.App.4th at pp. 941-942; *Weinstein*, *supra*, 139 Cal.App.4th at p. 59.)

Caltrans presented substantial evidence of the reasonableness of the design. The trial court properly granted the motion for summary judgment based upon statutory design immunity.[6]

B. *Conformity of Off-Ramp to Design Plans*

Menges contends the trial court erred by granting Caltrans design immunity because an alleged lack of conformance between the plans and the actual construction precluded the application of the design immunity to this case. She lists three elements of the freeway in the vicinity of the accident that were not in exact conformance with Caltrans's design plans. Specifically, Menges asserts: (1) A "Must Exit" sign was not

---

[5] The MUTCD provides standards and specifications guidance for all official traffic control devices in California, in accordance with Vehicle Code section 21400.

[6] Menges suggests the trial court previously "found" the facility was "patently dangerous" when granting codefendant Brutoco Engineering & Construction's (Brutoco) motion for summary judgment in 2015. Not so. The court stated, "[Menges] failed to raise a triable issue of material fact on whether the alleged defects were latent or patent, and therefore Brutoco is entitled to the benefit of the completed-and-accepted doctrine as a matter of law."

9

moved as required by the plans; (2) the gore area[7] was not striped to plan specifications; and (3) the channelizer striping was incorrect. We find no error.

Menges based her arguments upon her experts' declarations. Caltrans filed written objections to these declarations based on a lack of foundation and improper legal conclusions. Caltrans concedes the trial court did not make specific rulings on its objections, thereby preserving them on appeal. (*Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 534.)

While the trial court did not make an explicit ruling on the evidentiary objections, in its ruling on the motion, it stated as follows: "[Menges] asserts that design immunity does not apply to certain of the defects because they were not built according to the approved plans. In support of this assertion, [Menges] asserts (a) [Caltrans] failed to move the 'Must Exit Sign' further north as called for in the plans; (b) the gore area was built incorrectly, was not chevron striped, and not striped to plan specifications; and (c) the channelizer striping was incorrect. [¶] The problem with each of [these] assertions is they are supported only by expert conclusions with no foundation or explanation as to how the experts came to those conclusions. [¶] '[E]xpert opinions, even though uncontradicted, are worth no more than the reasons and factual data upon which they are based.' [Citation.] 'If his opinion is not based upon facts otherwise proved . . . it cannot rise to the dignity of substantial evidence.['] [Citations.] [¶] In contrast, [Caltrans's] substantial evidence demonstrates the gore point, channelizer, and 'Must Exit' sign were built and placed substantially in accordance with the plans."

A party ""'"cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a trial issue of fact. [Citation.]" [Citation.]' [Citation.]" (*Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1379.) Similarly, a plaintiff cannot "manufacture

---

[7]     The gore area is a triangular space separating I-5 and the off-ramp.

a triable issue of fact through use of an expert opinion with self-serving conclusions, devoid of any bias, explanation or reasoning. [Citation.]" (*McGonnell v. Kaiser Gypsum Co., Inc., et al*. (2002) 98 Cal.App.4th 1098, 1106.) We agree with the trial court's reasoning expressed in its tentative decision, discounting the declarations of Ruzak and Avrit as conclusory and lacking foundation.

Menges relies on the following portions of Ruzak's declaration to support her arguments on appeal: "The [g]ore was built incorrectly in that there was no chevron striping within the gore and the striping is wrong/off as shown on the [a]s-[b]uilt plans. The [c]hannelizer striping also does not comport with the [a]s-[b]uilt plans. It would have been acceptable to deviate in this manner if the Avenida Pico signage was correct. However, these striping deviations in concert with the unreasonable negligent signage at this off ramp area created a further trap and dangerous condition for motorists." Menges makes no argument as to how or why this expert opinion was supported by evidence or more than a mere speculation. There is simply no explanation as to why we should consider this evidence.

Similarly, Menges lists Avrit's various opinions disagreeing with Nelson and opining, without citation to evidence, there were significant differences between the approved design and the condition of the roadway. Menges fails to explain how the opinions were formed, what evidence they were based upon, or why we should overrule Caltrans's objections to those opinions. Instead, Menges cites to the standard of review on a summary judgment motion, stating her burden is only to show a triable issue of fact. Menges's failure to address the specific objections on appeal is telling. Caltrans's objections numbers three and four to the initial Ruzak and Avrit declarations and objections to Avrit's supplemental declaration are convincing.

Our dissenting colleague contends the substantial evidence standard only applies to the "reasonableness" element of the design immunity defense, and not to related but distinct issues, including loss of design immunity as a result of a

11

subsequently-developing dangerous condition, or (as presented by this case) non-conformity of the construction itself with the plans. (Citing *Cornette*, *supra*, 26 Cal.4th at pp. 72-73.) *Cornette*, however, did not involve the issue of conformity to approved plans. Instead, it applied the elements of a loss of design immunity due to changed conditions, which is not at issue in this case. *Cornette* articulates rules applicable for determining if an existing design immunity has been lost. Once design immunity has been established, to demonstrate loss of design immunity a plaintiff must establish three elements: (1) the plan or design has become dangerous because of a change in physical conditions; (2) the public entity had actual or constructive notice of the dangerous condition thus created; and (3) the public entity had a reasonable time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity, unable to remedy the condition due to practical impossibility or lack of funds, had not reasonably attempted to provide adequate warnings. (*Id.* at p. 72.) The *Cornette* court explained, "The questions involved in loss of design immunity, e.g., whether the plan or design has become dangerous because of a change of physical conditions, are not the identical questions considered by the government officers who adopted or approved the plan." (*Id.* at p. 73.)

Here, in contrast to *Cornette*, Menges does not claim there was a change in conditions such that Caltrans lost its design immunity. Instead, she argues Caltrans never established a design immunity defense because the construction did not conform to the approved plans. In this case, the *Wyckoff* case applies because it explains the appropriate test for deciding the initial question of design immunity. "[I]n order to avail itself of the affirmative defense of design immunity, the public entity must demonstrate that the improvement as designed substantially 'conformed to a design approved by the public entity vested with discretionary authority.'" (*Wyckoff*, *supra*, 90 Cal.App.4th at p. 52.) Caltrans did just that.

12

In any event, even if we were to adopt our dissenting colleague's standard, as well as assume the Ruzak and Avrit declarations were properly admitted and relied upon, they do nothing to change the merits of the issue. "[S]ubstantial[] conformance" with the design plans is all that is required; a minor deviation from the approved plan as designed will not preclude the application of the immunity. (*Wyckoff*, *supra*, 90 Cal.App.4th at p. 52.) Caltrans's evidence demonstrated there was substantial conformance with the design plans. As to the gore area, Nelson stated the as-built plans did not call for chevrons in the gore area. Nelson also concluded, after measuring the actual post-construction location and distance of the "Must Exit" sign in the field, there was a four-foot difference between the plans and the as-built condition. He further stated this variance was well within reasonable construction tolerances for such an installation. Finally, Nelson explained the channelizer striping was done in accordance with MUTCD, in effect at the time of the plan's approval. He opined the striping was in substantial conformance with the plans, as confirmed by a site examination and from photographs.

In his declaration, Ruzak concedes deviation with the striping would be acceptable if there was no issue with the signage. Avrit's declaration focused on the signage issue, opining, "Caltrans did not construct the subject project in exact compliance with their own approved design plans." This, of course, misstates the standard because substantial conformity, not exact, is all that is required. Caltrans's extensive expert evidence was more than a mere stamp on the plans. Because Menges's experts failed to raise a triable issue of material fact that Caltrans did not substantially conform to the design plans, summary judgment was appropriate.

III. *Denial of Request for Continuance*

Menges further claims the trial court committed reversible error by refusing her oral request to continue the motion for summary judgment made the day of the hearing. Her claim has no merit.

13

"'If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just.  The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due.'  ([§] 437c, subd. (h).)"  "When a party makes a good faith showing by affidavit demonstrating that a continuance is necessary to obtain essential facts to oppose a motion for summary judgment, the trial court must grant the continuance request.  [Citation.]  'Continuance of a summary judgment hearing is not mandatory, however, when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under [ ] section 437c, subdivision (h).  [Citations.]'"  (*Park*, *supra*, 201 Cal.App.4th at pp. 1427-1428.)

Menges made an oral request for continuance request at the end of the summary judgment hearing.  Her need for the continuance was to submit a third expert declaration regarding the location of the "Must Exit" sign.  The trial court, however, had already determined the difference between the planned location and its actual location was not significant to the motion.  Furthermore, Menges makes no effort to explain why a continuance would provide additional information, where the parties had extensively briefed and submitted multiple expert declarations on that precise issue.  The continuance request was untimely, failed to follow proper procedure, and lacked an essential basis.  We find no abuse of discretion.

IV.  *Costs and Fee Award*

Menges challenges the trial court's award of expert witness fees to Caltrans.  She asserts the 998 offer was not statutorily compliant and was unreasonable and the award of $24,516.05 for work performed by Elevante and Jesko was excessive.  We find no error and affirm the award.

14

"An offer to compromise under section 998 must be sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the offer." (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764.) The inclusion of nonmonetary terms and conditions does not render a 998 offer invalid; but those terms or conditions must be sufficiently certain and capable of valuation to allow the court to determine whether the judgment is more favorable than the offer. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799-801.)

Menges attacks the 998 offer, claiming it was void because it contemplated a dismissal in exchange for a payment, not an entry of judgment, it was conditioned on the execution of a release, and the terms were uncertain. A 998 offer that includes a dismissal with prejudice or the execution of a release as a settlement term is valid. (*Sanford v. Rasnick* (2016) 246 Cal.App.4th 1121, 1130.)

Furthermore, the terms of the 998 offer here were certain. Specifically, the offer provided as follows: "This offer is subject to the following conditions: [¶] 1. This is an offer to settle, not an offer to have judgment taken. [¶] 2. This offer is subject to a good faith determination order. [¶] 3. [Menges] must dismiss her complaint for damages against [Caltrans], in its entirety, with prejudice. [¶] 4. [Menges] must execute a release of all claims in favor of [Caltrans]. [¶] 5. The parties will bear their own costs. [¶] 6. [Menges] will be liable for all medical bills, liens or other financial obligations resulting from the accident." The terms were clear and sufficiently certain.

Next, we turn to Menges's claim the 998 offer was unreasonable and not made in good faith. Because Caltrans prevailed on its motion for summary judgment, it constituted prima facie evidence the $25,000 offer was reasonable. (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 152.) Additional factors demonstrating good faith include the offer was not made until almost two years after the complaint was filed and Caltrans's litigation position had been made clear. In addition, Caltrans provided

15

Menges with a letter detailing why it did not believe it had liability. Menges fails to point to evidence demonstrating the trial court abused its discretion, instead merely contending she viewed the offer as invalid and not in good faith. Menges failed to carry her burden.

Finally, we turn to Menges's claim the expert witness costs awarded were excessive and unwarranted, requiring reduction. Section 998 provides: "the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses . . . actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." (§ 998, subd. (c)(1).)

Menges asserts the award of costs was unreasonable because it was for unnecessary medical records review. Her assertions, however, are unsupported by factual or legal citations. As a result, she fails to carry her burden to demonstrate abuse of discretion. "'To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]' [Citation.] 'Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review.' [Citation.] 'Hence, conclusory claims of error will fail.' [Citation.]" (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457.)

## DISPOSITION

The judgment is affirmed. Caltrans shall recover its costs on appeal.


O'LEARY, P. J.


I CONCUR:


BEDSWORTH, J.

16

**THOMPSON, J.,** dissenting.  I respectfully dissent.  Design immunity is only a defense if the improvements are constructed in substantial conformity with the approved design. If Caltrans designed an off-ramp but constructed a wall instead, the reasonableness of the off-ramp design would have no bearing on its liability if someone drives into the wall.

In this case, Menges contends the freeway off-ramp was not constructed in substantial conformity with the approved design.  The parties offered conflicting expert opinions on this point that show triable issues of material fact which cannot be resolved by summary judgment.  So a trial is required to determine if design immunity applies.

The majority's contrary conclusion is wrong for three reasons.  First, the majority erroneously sustains the objections to Menges's expert declarations.  Second, the majority incorrectly applies the substantial evidence standard to the substantial conformity issue.  Third, the majority mischaracterizes and improperly weighs the opinions of Menges's experts.  I will discuss each of these mistakes in turn.

1. *The Evidentiary Objections to Menges's Expert Declarations Must be Overruled*.

Menges provided two expert declarations to support her contention the off-ramp was not constructed in substantial conformity with the approved design.  These expert declarations followed the familiar industry-standard format for presenting expert opinions in support of or opposition to a motion for summary judgment.  The experts described their qualifications and experience, listed the materials they reviewed and the investigative steps they undertook, and then set forth their opinions.

Caltrans objected to these expert declarations on lack of foundation and improper legal conclusion grounds.  The majority acknowledges the trial court never ruled on these objections.  But the majority does not acknowledge that, as a result, we are required to presume the trial court overruled these objections.  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)  Plus, the standard applicable to our review of the trial court's presumed ruling is unsettled.  The majority applies de novo review (without saying so), but the abuse of discretion standard is probably applicable.  (*Id.* at 535.)

In any event, Caltrans's evidentiary objections must be overruled. Menges's experts did exactly what the law requires to establish the foundation for their opinions by setting forth their credentials (which Caltrans does not challenge), and the materials reviewed and investigation undertaken (which Caltrans also does not challenge). Thus, there is no lack of foundation. As for their opinions themselves, Menges's experts identified three specific points of departure from the approved design. These are plainly admissible expert opinions, not inadmissible legal conclusions.

2. *The Substantial Evidence Standard Does Not Apply to Substantial Conformity.*

The majority concludes summary judgment was proper, even if Menges's expert declarations are considered, since substantial evidence shows the off-ramp was constructed in substantial conformity with the approved design. This conclusion is wrong. The substantial evidence standard applies only to the reasonableness element of the design immunity defense. It does not apply to the question of whether the off-ramp was constructed in substantial conformity with the approved design. Here is why.

"The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 (*Cornette*).) "[A] public entity claiming design immunity must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) *substantial evidence* supporting the reasonableness of the plan or design. [Citations.]" (*Ibid.*, italics added.)

The substantial evidence standard in the reasonableness element is from Government Code section 830.6 (section 830.6), which provides immunity "if the trial or appellate court determines that there is substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design . . . or (b) a reasonable legislative body or other body or employee could have approved the plan or design."

2

Based on the plain language of section 830.6 and the rationale for design immunity, I conclude the substantial evidence standard applies only to the reasonableness (i.e., third) element of the affirmative defense; not to any substantial conformity issues related to the other elements of the affirmative defense or the loss of design immunity. *Cornette* supports my conclusion, and *Wyckoff v. State of California* (2001) 90 Cal.App.4th 45 (*Wyckoff*) does not support the majority's contrary conclusion.

A. *Cornette*

*Cornette* concerned an automobile accident and the plaintiffs' claim against Caltrans, which was based on the allegedly dangerous condition of a highway created by the absence of a median barrier at the location of the accident. (*Cornette, supra*, 26 Cal.4th at p. 67.) The plaintiffs stipulated the freeway design without a median barrier was reasonable when it was built, but contended any design immunity had been lost because the physical conditions had changed in the years since. (*Ibid.*)

The trial court bifurcated the design immunity defense and agreed to try that issue first. The trial court then ruled none of the issues relating to the existence of design immunity or its loss would be submitted to the jury; rather, these issues would be tried by the court as the trier of fact. (*Cornette, supra*, 26 Cal.4th at p. 67.) This was done over the objection of the plaintiffs who contended that, with the exception of the third element of design immunity (substantial evidence of the reasonableness of the design), all issues related to design immunity or its loss should be tried to the jury. (*Ibid.*)

Resolving factual disputes in favor of Caltrans, the trial court found Caltrans had established design immunity and had not lost it. (*Cornette, supra*, 26 Cal.4th at p. 68.) Judgment was entered for Caltrans, the plaintiffs appealed, and the Court of Appeal reversed and remanded for a new trial. (*Ibid.*) The Court of Appeal held the trial court had improperly denied the plaintiffs their right to a jury trial of the disputed issues pertaining to the question whether Caltrans had lost its design immunity. (*Ibid.*) Our Supreme Court affirmed the judgment of the Court of Appeal. (*Ibid.*)

3

The Supreme Court stated: "The question presented by this case is whether the Legislature intended that the three issues involved in determining whether a public entity has lost its design immunity should also be tried by the court. Our examination of the text of section 830.6, the legislative history of that section, and our prior decisions leads us to the conclusion that, where triable issues of material fact are presented, as they were here, a plaintiff has a right to a jury trial as to the issues involved in loss of design immunity." (*Cornette*, *supra*, 26 Cal.4th at pp. 66-67.)

The Supreme Court reasoned: "[T]he one element of design immunity the Legislature did expressly reserve for the court, the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design, differs significantly from the three elements of loss of design immunity. '[I]n enacting section 830.6, the Legislature was concerned lest juries be allowed to second-guess the discretionary determinations of public officials by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan.' (*Baldwin* [*v. State of California* (1972)] 6 Cal.3d [424,] 434].) The questions involved in loss of design immunity, e.g., whether the plan or design has become dangerous because of a change of physical conditions, are not the identical questions considered by the government officers who adopted or approved the plan. Therefore, the Legislature would arguably not have had the same rationale for taking such questions away from the jury. Again, 'where experience has revealed the dangerous nature of the public improvement under changed physical conditions, the trier of fact will not simply be reweighing the same technical data and policy criteria which went into the original plan or design. Rather, there will then be objective evidence arising out of the actual operation of the plan—matters which, of necessity, could not have been contemplated by the government agency or employee who approved the design. No threat of undue interference with discretionary decision-making exists in this situation.' ([*Baldwin,*] at p. 435.)" (*Cornette, supra*, 26 Cal.4th at p. 73.)

In sum, *Cornette* held *only* the reasonableness (third) element of the design immunity defense was a legal issue to be tried by the court under the substantial evidence standard in section 830.6. *Cornette* refused to extend the substantial evidence standard to the first two elements of the design immunity defense or to the loss thereof, noting courts "may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed." (*Cornette, supra*, 26 Cal.4th at pp. 73-74.)

I will now demonstrate: (a) Menges's claim in this case is essentially the same as the plaintiffs' claim in *Cornette*; (b) the reasoning in *Cornette* applies with equal force here; and (c) the same result must therefore obtain.

Menges's claim here is indistinguishable from the plaintiffs' claim in *Cornette*. Menges claims any "design immunity was lost" by the time of the accident because the off-ramp was not constructed in substantial conformity with the approved design. (Appellant's Opening Brief, p. 40.) In *Cornette*, the plaintiffs claimed any design immunity was lost by the time of the accident because the traffic volume and the number of cross-median accidents significantly increased. So here, as in *Cornette*, the core claim is that any design immunity was lost because of changed physical conditions.

Hence, the main legal question presented here is the same as in *Cornette*— whether the Legislature intended that the three issues involved in determining whether a public entity has lost its design immunity should also be tried (or summarily adjudicated) by the court using the substantial evidence standard provided in section 830.6.[1]

---

[1] To demonstrate loss of design immunity a plaintiff must establish: (1) the plan or design has become dangerous because of a change in physical conditions; (2) the public entity had actual or constructive notice of the dangerous condition thus created; and (3) the public entity had a reasonable time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity, unable to remedy the condition due to practical impossibility or lack of funds, had not reasonably attempted to provide adequate warnings. (*Cornette, supra*, 26 Cal.4th at p. 67; *Baldwin v. State of California* (1972) 6 Cal.3d 424, 438 (*Baldwin*).)

5

And the reasoning in *Cornette* applies here too. It boils down to this: The existence of substantial evidence supporting the reasonableness of the approved design (the third element of the design immunity defense), differs significantly from the other two elements of the defense and from the three elements of loss of design immunity. In enacting section 830.6, the Legislature was concerned that juries would second-guess the discretionary determinations of public officials by reviewing the identical questions of risk that had previously been considered by the public officials who approved the design.

Whether the off-ramp became dangerous because it was not constructed in substantial conformity with the approved design is not the identical question considered by the Caltrans employees who approved the design. Therefore, the Legislature would not have the same rationale for taking such questions away from the jury. Again, where experience has revealed the dangerous nature of the off-ramp under changed physical conditions, the trier of fact will not simply be reweighing the same technical data and policy criteria which went into approving the design. Rather, there will then be objective evidence arising out of the actual operation of the plan—matters which, of necessity, could not have been contemplated by the Caltrans employees who approved the design. So no threat of undue interference with discretionary decision-making exists in this case.

Accordingly, the holding of *Cornette* fits like a glove, "where triable issues of material fact are presented, as they were here, a plaintiff has a right to a jury trial as to the issues involved in loss of design immunity." (*Cornette, supra*, 26 Cal.4th at p. 67.)

The majority's purported distinctions between this case and *Cornette* are unavailing and warrant no discussion beyond the points set out in the preceding pages.

The majority here repeats the very same mistakes this court made in *Higgins v. State of California* (1997) 54 Cal.App.4th 177, 184 (*Higgins*) which stated: "Section 830.6 design immunity . . . is ordinarily raised on a motion for summary judgment or nonsuit; the court decides whether there is sufficient evidence to support it. [Citation.] It is error to submit the issue to a jury. [Citation.]"

6

*Higgins* went on to apply the substantial evidence standard to all three elements of the design immunity defense, and to all three elements of the loss of design immunity. (*Higgins, supra*, 54 Cal.App.4th at pp. 185-189.)

*Cornette* held this was error after *Baldwin*, in which the Supreme Court ruled design immunity could be lost due to changed conditions, thus overruling its earlier decisions (e.g., *Cabell v. State of California* (1967) 67 Cal.2d 150) that had held design immunity lasted forever. (*Baldwin, supra*, 6 Cal.3d at pp. 438-439.)

*Cornette* acknowledged that after *Baldwin* was decided several Courts of Appeal, including this court in *Higgins*, had held that all three of the elements necessary to establish design immunity are legal issues for the court to decide under the substantial evidence standard. (*Cornette, supra*, 26 Cal.4th at p. 74.) However, *Cornette* observed, this line of cases, including *Higgins*, mistakenly relied on one of two earlier cases: *Cameron v. State of California* (1972) 7 Cal.3d 318 (*Cameron*); or *Mozzetti v. City of Brisbane* (1977) 67 Cal.App.3d 565 (*Mozzetti*). (*Cornette,* at p. 74.)

Regarding *Cameron*, the Supreme Court said it had reversed the trial court's ruling the state had established all the elements of the design immunity defense, because the state had no evidence the improvements were constructed in conformity with the approved design. (*Cornette, supra*, 26 Cal.4th at p. 75.) Also: "An appreciation of the procedural context of the case is critical to a proper understanding of our decision in *Cameron*. We did not say or even suggest that the first two elements of design immunity, much less the three elements required to prove loss of design immunity, were issues of law for the court to decide if it were not ruling on a motion for a directed verdict." (*Ibid*.)

Regarding *Mozzetti*, the Supreme Court said the Court of Appeal statement that design immunity is a legal issue to be tried by the court was dictum, stating: "The Court of Appeal . . . was simply not presented with the question whether the elements involved in *loss* of design immunity should be presented to the jury when, as here, the evidence as to those elements is disputed." (*Cornette, supra*, 26 Cal.4th at p. 74.)

7

All told, the majority here, like *Higgins*, violates *Cornette* in two critical respects:  (1) *Cornette* held only the reasonableness element of the design immunity defense is a legal issue to be tried by the court under the substantial evidence standard; and (2) *Cornette* refused to extend the court trial/substantial evidence aspects of section 830.6 to the loss of design immunity.  (*Cornette, supra*, 26 Cal.4th at pp. 73-74.)

Moreover, even if we could ignore the clear commands of our Supreme Court in *Cornette*, the majority's application of the substantial evidence standard in this case is plainly inconsistent with the unambiguous intent of section 830.6.  Unlike cases involving criticisms of the design itself, no considered policy-making decision of a public official is at stake when courts evaluate substantial conformity with the approved design.  There are no competing subjective criteria to be weighed.  Instead, what is presented is a question of fact:  were the improvements constructed in substantial conformity with the approved design, or were there material deviations?  And the normal rules requiring denial of summary judgment if any triable issue of fact appears, are fully applicable.

Coincidentally, the specific facts of this case also illustrate the error in the majority's reasoning.  Regarding the third element of the design immunity defense (reasonableness), the majority writes that Caltrans's civil engineer's approval of the design plans is enough to establish the reasonableness of the design for immunity purposes.  As far as it goes, this is a correct statement of the law on reasonableness of the design—a civil engineer's stamp of approval is enough. (See, e.g., *Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 941-942.)

Of course, this makes sense given the purpose of the design immunity statute, which is to privilege the considered decisions of public officials in designing public improvements against second-guessing by a jury.  The signature of a licensed civil engineer on the plans demonstrates the design is arguably reasonable (because it is supported by the opinion of at least one expert) and Caltrans accordingly receives design immunity for all features of the improvements consistent with the approved design.

8

But the plans in evidence in this case also contain a second stamp: a stamp of a subsequent civil engineer, noting that the plans are "as-builts," meaning the as-built condition of the off-ramp reflected on the plans substantially conformed to the approved design. Applying the majority's reasoning, this stamp, *by itself*, grants Caltrans total immunity from any claim the off-ramp was not constructed in substantial conformity with the approved design. This immunity would exist even if Caltrans had built a wall instead.

In fact, by the majority's reasoning, once Caltrans proffered the as-built plans, it was entitled to summary judgment, notwithstanding evidence of the changed physical condition of the off-ramp. The actual condition of the off-ramp at the time of the accident, as demonstrated by photographs, video, diagrams, etc., would be ignored because the as-built plans themselves are substantial evidence of the condition of the off-ramp. That would certainly be advantageous for Caltrans, but it is not the law.

B. *Wyckoff*

The majority concludes *Wyckoff*, not *Cornette*, provides the appropriate standard for deciding the design immunity questions presented in this case. Not so.

In *Wykoff*, the plaintiff was injured and his wife and two children were killed when a driver heading northbound on a freeway crossed the center median and crashed head-on into the plaintiff's southbound vehicle. "Plaintiff sued the State of California (State) for damages for personal injury and wrongful death on the theory that the lack of a center median barrier at the collision site constituted a dangerous condition of public property." (*Wyckoff, supra*, 90 Cal.App.4th at p. 49.)

"The trial court granted summary judgment for the State on the ground of design immunity (Gov. Code, § 830.6)." (*Wyckoff, supra*, 90 Cal.App.4th at p. 49.) The plaintiff appealed, contending (1) the State failed to establish the design immunity affirmative defense, or (2) if it did establish initial design immunity, it had lost that immunity by the time of the accident because of changed conditions at the accident site. (*Ibid.*) The Court of Appeal rejected these contentions and affirmed. (*Id.* at p. 63.)

9

The majority's reliance on *Wyckoff* is misplaced for at least three reasons.

First, *Wyckoff* was decided before, and therefore without the benefit of, *Cornette*. As such, *Wyckoff* provides no basis for distinguishing *Cornette* from the present case. Moreover, *Wyckoff* is a Sixth District case, and at that time the relevant precedent in that district was *Uyeno v. State of California* (1991) 234 Cal.App.3d 1371, which erroneously stated that *all* design immunity questions were to be decided by the court. The Supreme Court in *Cornette* listed *Uyeno* with *Higgins* among the line of cases that made this error based on *Mozzetti*, and *Cameron*, effectively abrogating this entire line of cases as discussed above. (*Cornette, supra*, 26 Cal.4th at p. 74, fn. 3.)

And, if there were any doubt *Wyckoff* is no longer good law, *Wyckoff* quoted this court's abrogated *Higgins* decision on exactly this point. (*Wyckoff, supra*, 90 Cal.App.4th at p. 52.) *Wyckoff* went on to apply the substantial evidence standard to the loss of design immunity claim, directly contradicting *Cornette*. (*Wyckoff, supra*, 90 Cal.App.4th at p. 60.) To put it bluntly, *Wyckoff* is bad law. It was overruled by our Supreme Court in *Cornette*, and the majority blunders in relying on it.

Second, even if *Wyckoff* were still good law, the *Wyckoff* court was not faced with any meaningful factual dispute over substantial conformity with the approved plans, and thus did not actually apply the substantial evidence standard to that issue. The factual dispute in *Wyckoff* was over the width of a median designed to be 46 feet wide. (*Wyckoff, supra*, 90 Cal.App.4th at p. 52.)

The experts on both sides and the highway patrol officer who prepared the collision report all measured the median and reported results ranging from 45 feet, 1 inch to 45 feet, 10 inches. (*Wyckoff, supra*, 90 Cal.App.4th at p. 53.) The *Wyckoff* court did not resolve this factual dispute. Instead, it concluded the median was constructed in substantial conformity with the approved plans *regardless of whose expert was believed*. (*Id.* at pp. 52-55.) Here, by contrast, Menges's experts detailed what they opined were three substantial and meaningful deviations from the approved plans.

10

Third, the majority argues this case and *Wyckoff* both concern a claimed failure to establish the design immunity defense, while *Cornette* concerned a claimed loss of design immunity. But *Wyckoff* and this case, like *Cornette*, also involved a claimed loss of design immunity due to changed conditions, to which the *Wyckoff* court erroneously applied the substantial evidence standard. (*Wyckoff, supra*, 90 Cal.App.4th at p. 60.) Besides, these are just two sides of the same coin, as I will now explain.

After *Baldwin*, section 830.6 was amended to address a loss of design immunity. As amended, section 830.6 states: "Notwithstanding notice that constructed or improved public property may no longer be *in conformity with a plan or design . . .* , the immunity provided by this section shall continue for a reasonable period of time sufficient to permit the public entity to obtain funds for and carry out remedial work necessary to allow such public property to be *in conformity with a plan or design* approved by the legislative body of the public entity or other body or employee, or with a plan or design in conformity with a standard previously approved by such legislative body or other body or employee." (Italics added.) If a repair cannot be made, the statute allows the public entity to provide "adequate warnings of the existence of *the condition not conforming to the approved plan or design* or to the approved standard." (§ 830.6, italics added.) So section 830.6 now analyzes lack of conformity with the approved design as a loss of design immunity issue, and again *Cornette* expressly held the substantial evidence standard does not apply to loss of design immunity issues.

On the flip side, lack of conformity with the approved design can also be analyzed in relation to the first element of the design immunity defense: the "causal relationship between the plan or design and the accident." (*Cornette, supra*, 26 Cal.4th at p. 69.) If the improvement is not built in substantial conformity with the approved plan or design, there is no causal link between the design and the injury. This is a triable issue of material fact for the jury to decide under traditional standards, not a question for the court to decide under the substantial evidence standard. (*Id.* at p. 75.)

11

In conclusion, design immunity is supposed to protect the decisions of policymakers designing or approving the design of a work of improvement, not the mistakes of contractors building one. And it is a pure creature of statute, to be applied only as the Legislature commands, and not further. By applying the substantial evidence standard to the first two elements of the design immunity defense, and to the elements of the loss of design immunity claim, the majority opinion violates both of these principles.[2]

3. *The Conflicting Expert Opinions Raise Triable Issues of Material Fact*.

The majority contends even if the substantial evidence standard does not apply in this case, Menges failed to raise a triable issue of material fact vis-a-vis substantial conformity with the approved plans. Here the majority mischaracterizes and improperly weighs the opinions of Menges's experts—Ruzak and Avrit.

Ruzak, the majority remarks, conceded the identified nonconformity with the plans would be permissible if there were no problem with the other signage. But the majority ignores Ruzak's underlying point—that the deviations from the plans would only have been acceptable if the off-ramp had been designed differently (specifically, with an overhead sign containing arrows directly over each of the two exiting lanes).

Avrit, the majority contends, said only that "Caltrans did not construct the subject project in exact conformity with their own approved design plans." And, since exact conformity is not required, the majority discards Avrit's opinion altogether. But the majority takes this quote out of context, from Avrit's rebuttal declaration, where he was explaining why Caltrans's expert's reliance upon the "as-built" stamp was a mistake. It also appears the majority cherry-picked this quote to make it look like Avrit's declaration supports the majority's conclusion. It does not.

_____

[2] The majority claims Menges admitted Caltrans established the first two elements of the design immunity defense. Not quite. Menges's opening brief elected not to address the first two elements, and instead addressed the substantial conformity issue in relation to the third element—"unreasonable design." This approach, together with the arguments in her reply brief and her oral arguments, preserved the issue on appeal.

12

The principal opinion in Avrit's main declaration in opposition to the motion for summary judgment is decidedly different: "it is my opinion that there are significant differences between the approved design and the condition of the roadway at the subject off-ramp including [the "Must Exit" sign, the lack of chevrons in the gore area, and the improper channelizer striping]." That is certainly sufficient to create a triable issue of fact over substantial conformity with the plans.

Finally, the majority weighs the opinions of Caltrans's expert, which the majority writes were "extensive," against the opinions of Menges's experts, and finds the opinions of Menges's experts unconvincing. This is patently improper. On summary judgment, absent the substantial evidence standard, we cannot weigh competing expert opinions, evaluate their credibility, and pick a winner, no matter how "extensive" the opinions may be. (Code Civ. Proc., § 437c; *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 186-189 (*Garrett*) [trial court's gatekeeping function in evaluating expert testimony on summary judgment does not involve "choosing between competing expert opinions"].) That role is reserved for the trier of fact—usually, a jury.

What's more, in performing our de novo review, we are required to strictly construe the evidence of the moving party and liberally construe the evidence of the opposing party; and we must resolve all evidentiary doubts or conflicts and indulge all reasonable inferences in favor of the opposing party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768; see also *Garrett*, *supra*, 214 Cal.App.4th at p. 189.)

For all these reasons, the summary judgment must be reversed, and this case must proceed to a trial on the merits as preferred by California law. As the justices in the majority here noted in *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395, "'Though often said, it appears necessary to again reiterate that a summary judgment is a drastic measure which deprives the losing party of trial on the merits.' [Citations.] The right to a jury trial, embodied in article I, section 16 of the California Constitution, is at stake. (See Troutman, *The Jury Trial* (1977) 51 Fla. B.J. 331, 332 [cautioning against too

13

liberal summary judgment as an 'abandonment of the hard-fought principles of our forefathers who believed that no amount of economy and efficiency is adequate consideration for a fair and impartial jury' trial].) . . . But technical compliance with the procedures of Code of Civil Procedure section 437c is required to ensure there is no infringement of a litigant's hallowed right to have a dispute settled by a jury of his or her peers."


THOMPSON, J.

14