Filed 7/19/22  Mendez v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CARLOS FLORO TORRES MENDEZ, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF SAN DIEGO, <br><br> Defendant and Respondent. | D079261 <br><br><br><br> (Super. Ct. No. 37-2019-00000377-CU-PO-NC) |


APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Gavrilov & Brooks, Sheila Wirkus Pendergast and Ognian Gavrilov for Plaintiff and Appellant.

Office of County Counsel, Christopher J. Welsh and Sylvia S. Aceves, Deputy Counsel for Defendant and Respondent.


Carlos Floro Torres Mendez appeals following a summary judgment in his lawsuit against the County of San Diego (the County) arising from injuries he suffered in a bicycle accident on a stretch of road that he contends constituted a dangerous condition of public property.  Specifically, Mendez

challenges the trial court's ruling that the County established the affirmative defense of design immunity pursuant to Government Code section 830.6.[1]

Mendez contends that the trial court erred in granting summary judgment because a triable issue of fact exists on whether, during the County's 2014 review of possible safety modifications to Olive Hill Road, the County considered and rejected the safety features that Mendez contends should have been added to the road to alleviate the alleged dangerous condition.

On our de novo review of the trial court's summary judgment ruling, we conclude that Mendez has not identified a triable issue of material fact. We accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2017, at approximately 5:00 a.m., Mendez was riding his bicycle on Olive Hill Road, which is a County-owned and maintained road with one lane in each direction. A car driven by Dylan K. collided with Mendez's bicycle while both vehicles were traveling northbound on Olive Hill Road, just prior to the intersection with Rancho Camino. In a deposition, Dylan K. testified that immediately before the accident, his attention was drawn to the left side of the road by a dog, and thus he did not see Mendez on the right side of the road. On the stretch of Olive Hill Road where the collision occurred, there is only a very narrow paved shoulder on the edge of the northbound lane, but there is an approximate 10-foot wide paved

---

[1]    Unless otherwise indicated, all further statutory references are to the Government Code.

shoulder on the edge of the southbound lane.[2]  The area is not lighted. According to Mendez, as a result of the collision he suffered serious injuries, including quadriplegia.

Mendez filed a lawsuit against the County and other parties.  Against the County, Mendez's operative third amended complaint asserted a single cause of action for dangerous condition of public property.  (§ 835.)  Mendez alleged that the portion of Olive Hill Road where the accident occurred was dangerous because "bicyclists in the northbound lane of traffic were funneled into the same travel lane as motorists traveling at 50 mph with an obstructed vision of bicyclists ahead of them.  There was no signage warning of the presence of bicyclists.  The obstructed vision of motorists resulted in inadequate time for motorists to perceive and react to the presence of bicyclists to avoid collision with them."  Further, according to Mendez, the road had "inadequate lighting" and "[t]he northbound side had no right shoulder."  Summarizing these allegations, Mendez alleged that "[t]he lack of a northbound road shoulder, inadequate lighting, obstructed view and high-speed limit created a 'trap' for all northbound traveling bicyclists as they were at risk of impact from behind by a high-speed motorist."[3]

---

[2]  According to the declaration of Mendez's expert, the shoulder on the northbound lane "is a variable 4 inch to 12-inch paved area in some areas and a variable 2 feet to 6-inch paved area in other spots."

[3]  Similarly, in responses to special interrogatories Mendez identified the features of the roadway that he alleged created a dangerous condition: "Defendant County of San Diego created a dangerous and defective condition, whereby they maintained a roadway with a limited and obstructed view for traffic due to poor lighting, poor road striping, their failure to provide adequately distributed shoulders or a bicycle lane for bicyclists and without signs posted to warn motorists of bicycles on the roadway.  These conditions

3

The County filed an answer to the third amended complaint, which included the affirmative defense of design immunity. (§ 830.6.) The County then moved for summary judgment, or in the alternative, for summary adjudication.

The County contended it was entitled to summary judgement because (1) it had established the affirmative defense of design immunity; or, (2) in the alternative, Mendez would be unable to prove one or more of the elements of a claim for dangerous condition of public property.

In support of its motion, the County submitted declarations, including one from a County traffic engineer, Karel Shaffer, who designed the plans for a safety enhancement project on Olive Hill Road in 2014. As the evidence established, the County Engineer and Road Commissioner reviewed and recommended approval of Shaffer's plans and the project. The project was subsequently approved by the County's board of supervisors, and the work was completed.

As Shaffer explained in his declaration, the 2014 project involved installing a rumble strip down the centerline of Olive Hill Road.[4] In designing the project, he also considered other possible changes or additions to the road to enhance safety: "Before I drafted the project plans, I personally went out to Olive Hill Road for the specific purpose of looking for traffic

led to inadequate stop [sight] distance for any motorist traveling northbound on Olive Hill Road such that motorists upon seeing a bicyclist in the roadway could not stop before running down and striking the bicyclist in the same manner Plaintiff was run down and struck."

[4]     As Shaffer described, "Rumble strips . . . cause noise and vibration which alert drivers that they need to slow down or pay better attention and steer back into their own lane."

safety issues. I drove the length of Olive Hill Road looking for areas where safety improvements might be warranted." Shaffer specifically explained:

"In creating the design plans for the 2014 Centerline Rumble Strip project, I was aware of the potential for changes and additions to the section of Olive Hill Road where [Mendez's] crash happened. Exercising my engineering judgment, I rejected the following additions or changes because I did not feel they were warranted:

"a. Adding a bike lane: As of 2014-2017, this section of Olive Hill Road was not even on the County's list for future addition of a bike lane. When I designed the Centerline Rumble Strip project, I was aware that bicyclists used Olive Hill Road and would have to ride in the same lanes that cars travelled in. This was intended. In my judgment, adding a bike lane was not necessary. The County used the 'Bikeway Planning and Design' section of the California Highway Design Manual as the County's bikeway standard when creating bikeways. But since there is no requirement to have bikeways on all County roads, and there was not a bikeway on Olive Hill Road, the standards did not require any additions to Olive Hill Road.

"b. Re-configuring the lanes approaching Rancho Camino to provide more paved shoulder to the right of the northbound lane: The wide section of paved roadway on the west side of Olive Hill Road near the crash site was added to enhance access to a housing development and does not extend very far to the north or south. This resulted in a wide shoulder on the west side of the road, and a narrow shoulder on the east side of the road for a short distance. Restriping the lanes to shift them over where there is wider pavement, and then shift them back a short distance later where the wide pavement ends, was not a good option in my opinion. It would create a meandering centerline which I find is not ideal for motorists. In my judgment, the centerline and lane striping was appropriate and did not need to be altered;

"c. Re-configuring the lanes approaching Rancho Camino to provide a wider northbound lane. Again, restriping the lanes to shift them over where there is wider pavement, and then shift

5

them back a short distance later where the wide pavement ends, was problematic for the reasons described in paragraph (b).

"d.  Adding 'Share the Road' signs or other similar signs regarding the use of the road by bicyclists:  In my judgment, such signs were not warranted on Olive Hill Road;

"e.  Installation of overhead street lights:  The County does not typically provide overhead street lighting.  I did not see any unusual need to install street lighting on the section of Olive Hill Road where the crash happened;

"f.  Lowering the speed limit:  During the design process I was aware of the County's process for gathering speed data and posting speed limits, and I felt the posted speed limit was appropriate on this section of Olive Hill Road;

"g.  Increasing the available sight distance for northbound vehicles approaching the crash area just before Rancho Camino:  In my judgment, the sight distance for northbound vehicles is adequate for reasonable, attentive drivers and meets the County's operational sight distance standards which apply to existing roads such as Olive Hill Road.

"7.  In my opinion as a Civil Engineer and Traffic Engineer, rejecting these potential changes while designing the Centerline Rumble Strip project was reasonable."

Further, in support of its summary judgment motion, the County submitted a declaration from an expert who opined that in designing the 2014 rumble strip project it was reasonable for Shaffer to exercise his engineering judgment to decide not to include (1) a bike lane; (2) a reconfiguration of the lanes to include additional paved shoulder; (3) "Share the Road" signs for the benefit of bicyclists; (4) overhead street lights; (5) an increase in the available sight distance; and (6) a speed limit reduction.

In opposition, Mendez submitted a declaration from his own expert opining on safety improvements that could have been made to Olive Hill

6

Road. "To a reasonable degree of probability and engineering certainty, the subject location of Olive Hill Road in the vicinity of Rancho Camino Road required additional signing such as BICYCLES SHARE THE ROAD to alert motorists to their location along said stretch of roadway. The lanes could have been reconfigured to create a wider shoulder for northbound bicyclists in this short section. There was no shoulder really available for [Mendez] to ride on and he was therefore funneled into the northbound lane with motorists approaching from the rear." The expert also noted that, in discovery, the County had not produced any documents corroborating Shaffer's statement that "engineering consideration was actually given to the addition of a bike lane, reconfiguration of the lanes at the collision site, addition of 'share the road' type signage, installation of overhead streetlights, reducing of the speed limit or increasing the available sight distance for northbound motorists."

In opposition to the summary judgment motion, Mendez also submitted excerpts from Shaffer's deposition. In one excerpt, Shaffer explained *why* he did not make any safety modifications to address bicycle traffic, even though the speed limit was 50 miles per hour and bicyclists were forced to share the road with motor vehicles: "[T]here's adequate sight distance; so vehicles can slow down and share the road with bicyclists. And we've had no reported

7

incidents, other than the subject case here, where we had a bicycle incident that I'm aware of."[5]

The trial court granted the motion for summary judgment. As the basis for its ruling, the trial court reached only the issue of design immunity and did not consider whether there was also merit to the County's contention that Mendez would be unable to establish one or more of the elements of a claim for dangerous condition of public property.

Mendez appeals from the judgment.

## II.

## DISCUSSION

Mendez contends that the trial court erred in granting summary judgment because there was a triable issue of material fact on the County's affirmative defense of design immunity. We begin by reviewing the applicable legal standards.

A. *Applicable Legal Standards*

"Under the Government Claims Act, '[a] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347 (*Hampton*), quoting § 815, subd. (a).) The cause of action at issue in this case—dangerous condition of public property—is based on the liability created by section 835. That provision states, "Except as provided by statute, a public entity is liable for injury

---

[5] During his deposition, Shaffer also confirmed that he had considered and rejected a modification of the centerline: "[T]his project was an opportunity to possibly modify the location of the centerline, if deemed necessary based on what I saw in the field and what I saw in our collision histories. And at the time of my evaluation, I determined that placing the centerline rumble strip on top of the existing centerline location was adequate."

8

caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:  [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."  (§ 835.)  "A dangerous condition is one that 'creates a substantial risk of injury' when the property is 'used with due care in a manner in which it is reasonably foreseeable that it will be used.'  (§ 830, subd. (a).)"  (*Hampton*, at p. 348.)

"If a dangerous condition is demonstrated, the public entity may still prevail against a claim by means of an affirmative defense of immunity." (*Hampton*, *supra*, 62 Cal.4th at p. 348.)  The type of immunity at issue here is design immunity, set forth in section 830.6.  In relevant part, section 830.6 provides, "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or

9

other body or employee could have approved the plan or design or the standards therefor." (§ 830.6.)

The affirmative defense of design immunity is intended "to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 (*Cornette*).) As relevant here, a public entity is entitled to design immunity even when the aspect of the design that causes the allegedly dangerous condition is an intentional *omission* of a safety feature that the public entity considered but reasonably rejected. (*Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1159-1161 [public entity was covered by design immunity based on a decision to omit a median barrier on the Golden Gate Bridge].)

It is well established that to prevail on design immunity as an affirmative defense, the public entity must establish three elements: "(1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Cornette, supra*, 26 Cal.4th at p. 69.) "The first two elements—causation and discretionary approval—involve factual questions to be resolved by a jury, unless the facts are undisputed. . . . The third element—the existence of substantial evidence supporting the reasonableness of the plan or design—is a legal matter for the court to decide." (*Tansavatdi v. City of Rancho Palos Verdes* (2021) 60 Cal.App.5th 423, 434, review granted Apr. 21, 2021,

10

S267453 (*Tansavatdi*).)[6]  On the third element, " '[a] mere conflict in the testimony of expert witnesses provides no justification for the matter to go to a lay jury who will then second-guess the judgment of skilled public officials.' " (*Menges v. Department of Transportation* (2020) 59 Cal.App.5th 13, 21 (*Menges*).)

This appeal concerns an order granting summary judgment. " 'A trial court properly grants a motion for summary judgment where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)' " (*Hampton, supra*, 62 Cal.4th at p. 347.)  "The defendant has the initial burden on summary judgment to show that undisputed facts establish an affirmative defense.  [Citation.]  Once the defendant meets that burden, the burden shifts to the plaintiff to show a triable issue of material fact regarding the defense." (*Filosa v. Alagappan* (2020) 59 Cal.App.5th 772, 778.)  " ' " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." '  [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' " (*Hampton*, at p. 347.)

---

[6]    Further, because "[d]esign immunity does not necessarily continue in perpetuity" (*Cornette, supra*, 26 Cal.4th at p. 66), section 830.6 specifies "circumstances under which design immunity may be lost when the danger arises out of *a change in physical conditions* of which the entity had notice and as to which it had time to obtain funding for and perform remedial work or provide appropriate warnings" (*Hampton, supra*, 62 Cal.4th at p. 348, italics added).  No change in physical conditions is claimed in this case.

11

Because the third element of an affirmative defense based on design immunity requires the defendant to establish no more than substantial evidence of a reasonable design, "a case involving design immunity does not function as a typical summary judgment case would. The court's role in evaluating the third element of the design immunity is not to provide a de novo interpretation of the design, but instead to decide whether there is 'any substantial evidence' supporting its reasonableness." (*Menges, supra,* 59 Cal.App.5th at p. 21.) " 'We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted.' . . . 'That a plaintiff's expert may disagree does not create a triable issue of fact.' " (*Id.* at p. 19, citations omitted.)

B.    *No Triable Issue of Material Fact Exists with Respect to Design Immunity*

Mendez contends that the portion of Olive Hill Road where the collision occurred constituted a dangerous condition because of a confluence of several factors: no paved shoulder or bike lane in the northbound direction; no overhead lighting; a 50 mile per hour speed limit; and the lack of signs informing motorists to "Share the Road" with bicyclists. The trial court ruled that the County was entitled to design immunity because the undisputed evidence showed that Shaffer had considered *each* of those features during his design of the 2014 rumble strip project and decided not to implement any changes to address them. Further, Shaffer's design was approved by the County Engineer and Road Commissioner; the Board of Supervisors approved the project; and the County's expert witnesses opined that the design was reasonable.

As we have explained, the County is entitled to design immunity if it can establish three elements: "(1) a causal relationship between the plan or

design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Cornette*, *supra*, 26 Cal.4th at p. 69.)

Mendez focuses on an argument that applies to both the first and second elements.[7] Specifically, Mendez contends that the evidence submitted in connection with the summary judgment motion supports a reasonable inference that, *contrary* to Shaffer's statements in his declaration, Shaffer *did not* consider and reject the safety features that Mendez contends should have been added to Olive Hill Road to make it safer for bicyclists. Mendez contends that "the plan for the centerline Rumble Strip did not show the consideration of lights, signs, speed limit, a bike lane, or anything else. Because those features are absent from the plan, the most reasonable inference is that those features were not considered." Mendez further points out that although Shaffer stated that he did consider *all* of those features, Shaffer did not give any *details* about why he rejected certain of them, namely, the warning signs, the street lighting, and the lowered speed limit.[8] According to Mendez, because Shaffer gave only "bare statements he did not think they were warranted or appropriate," a reasonable inference arises that Shaffer did not actually consider those features. Mendez summarizes his argument: "Although the trial court has discretion to accept an engineer's

---

[7] Mendez does not challenge the trial court's ruling as to the third element, observing that "[b]ecause the third element requires only substantial evidence of reasonableness, a public entity's evidence of the third element is virtually unassailable." Here, the expert declaration submitted by the County satisfied the third element.

[8] Mendez recognizes that Shaffer *did* provide details as to why he rejected the idea of installing a bike lane or reconfiguring the lanes to provide a wider paved shoulder for the northbound lane.

13

declaration about his state of mind and engineering judgment to exclude certain features, it was an abuse of discretion for the court to do so here, because the statements in his declaration were contradicted by reasonable inferences to the contrary. The reasonable inferences to draw from the design selected, its safety purpose, the plan itself, and the declaration offering engineering explanations for the decision not to have a meandering centerline while offering no explanation for the alleged decision to reject other safety features, are that the County engineer did not actually consider the risks to northbound bicyclists and did not actually consider whether certain features would have made that portion of Olive Hill Road safer for northbound bicyclists."

Mendez explains that if a triable issue of fact exists as to whether Shaffer *actually* considered and rejected the safety features identified in his declaration, then a triable issue of fact exists as to whether the County will be able to establish the first two elements of design immunity. As Mendez properly points out, if Shaffer's 2014 design did not consider the safety features that Mendez claims are needed for the safety of bicyclists, then there is no causal relationship between *that* 2014 design and the bicycle accident. The County therefore would not be able to establish the first element, namely "(1) a causal relationship between *the plan or design* and the accident."[9] (*Cornette*, *supra*, 26 Cal.4th at p. 69, italics added.) As to the second element, if Shaffer's 2014 design did not consider the safety features that Mendez claims are needed for the safety of bicyclists, then the County would not be

---

[9] "Causal relationship is proved by evidence the injury-producing feature *was actually a part of the plan* approved by the governmental entity: Design immunity is intended to immunize *only those design choices which have been made*." (*Higgins v. State of California* (1997) 54 Cal.App.4th 177, 185, italics added.)

14

able to show "discretionary approval" of any plan or design that would confer design immunity. (*Id.* at p. 69.)

We reject Mendez's argument. Shaffer's declaration plainly states that he considered and rejected all of the features that Mendez contends are necessary to make Olive Hill Road safe for bicyclists. Although Mendez contends that Shaffer was not truthful in making those statements, Mendez has failed to identify any evidence that *contradicts* Shaffer's statements. " 'When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 647.) Here, because Mendez has submitted no contradictory evidence, nothing more than speculation and guesswork supports Mendez's contention Shaffer did not actually consider the items described in his declaration. Instead, as we understand Mendez's argument, he believes that summary judgment should have been denied because, at trial, a jury might decide to *discredit* Shaffer's testimony and *disbelieve* Shaffer's express statement that he performed an engineering evaluation in which he rejected the safety features that Mendez contends are necessary.

This argument fails because "the law is clear that summary judgment may not be denied solely on the basis of the credibility of the moving party's witnesses." (*Ayon v. Esquire Deposition Solutions, LLC* (2018) 27 Cal.App.5th 487, 496.) Specifically, Code of Civil Procedure section 437c, subdivision (e), provides, "*If a party is otherwise entitled to summary judgment pursuant to this section, summary judgment shall not be denied on grounds of credibility . . .* , except that summary judgment may be denied in the discretion of the court if the only proof of a material fact offered in

15

support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to that fact; or if a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individual's affirmation thereof." (Italics added.)

Neither of the listed exceptions apply here. First, Shaffer's description of the safety features he considered and rejected describes the steps taken in carrying out a professional engineering evaluation; it does not merely describe "an individual's state of mind." (Code Civ. Proc., § 437c, subd. (e).) Second, because Shaffer also gave deposition testimony about his engineering evaluation, this is not a circumstance where "the only proof of a material fact . . . is an affidavit or declaration" (*Ibid.*; see also *Morales-Simental v. Genentech, Inc.* (2017) 16 Cal.App.5th 445, 460 ["Code of Civil Procedure section 437c, subdivision (e) focuses on the inability to cross-examine a witness who has not been deposed, but has submitted a declaration or affidavit. Here, [the witnesses] both gave deposition testimony."].)

Moreover, even if either of the exceptions were applicable, Code of Civil Procedure section 437c, subdivision (e) gives the trial court discretion to nevertheless grant summary judgment by crediting a declaration. (*Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 417 ["Although [Code of Civil Procedure] section 437c, subdivision (e) contains an exception to that rule when the declarant is the sole witness to a fact or testifies as to his or her state of mind, the trial court retains discretion to grant the motion based on such declarations."]; *Violette v. Shoup* (1993) 16 Cal.App.4th 611, 621 ["Although the summary judgment statute provides the court is not *bound* to accept an undisputed declaration by an individual as to his or her state of mind, such matter is committed to the discretion of the trial court."].) The trial court was well within its discretion to accept

Shaffer's declaration as undisputed evidence that Shaffer considered and rejected each of the safety features that Mendez contends is necessary to make Olive Hill Road safe for cyclists.[10]

Mendez suggests that in deciding whether Shaffer's declaration is credible, we should look to case law describing the inquiry to be performed in the context of a *Batson-Wheeler* motion, where the question is whether to credit a prosecutor's proffered race-neutral reason for exercising a peremptory strike. (*Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).) "The credibility of a prosecutor's stated reasons 'can be measured by, among other factors . . . how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.' " (*People v. Hamilton* (2009) 45 Cal.4th 863, 900.)[11] We reject the argument because the credibility issue in this case arises in a completely different context. As applicable to a summary judgment motion, Code of Civil Procedure section 437c, subdivision (e) provides that, unless an exception applies, "[i]f a party is

---

[10]   In general, "[t]he trial court's summary judgment ruling is subject to independent review. . . . 'The only exception to the independent review standard applies when we review a trial court's exercise of discretion as allowed by Code of Civil Procedure section 437c, subdivision (e).' " (*Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1490, citation omitted.) As we have explained, the trial court did not abuse its discretion in applying Code of Civil Procedure section 437c, subdivision (e) to consider Shaffer's declaration. Even if we were deciding in the first instance whether to consider Shaffer's declaration, Mendez has not provided any persuasive reason not to consider it.

[11]   Mendez refers to a specific analytical inquiry in a *Batson-Wheeler* context that was described in a dissent by Justice Mosk in *People v. Johnson* (1989) 47 Cal.3d 1194, 1292, which focused on unexplained disparate treatment of minority and nonminority jurors.

otherwise entitled to summary judgment pursuant to this section, summary judgment *shall not be denied on grounds of credibility*." (Italics added.) Here, unlike in a *Batson-Wheeler* context, because no exception to Code of Civil Procedure section 437c, subdivision (e) is present, neither we nor the trial court are charged with deciding whether to credit Shaffer's statement that he considered and rejected all of the safety features described in his declaration.

C.  *Mendez's Allegation That the Lack of Signage Constitutes a Failure to Warn Did Not Preclude Summary Judgment Because Shaffer Expressly Considered and Rejected the Installation of "Share the Road" Signs*

As we have explained, one aspect of the dangerous condition of public property alleged by Mendez is that the County failed to install signs warning motorists to "Share the Road" with bicyclists.

Section 830.8 states that, in certain circumstances, a public entity may be found liable for failing to install a sign warning of a dangerous condition. "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (§ 830.8.) Our Supreme Court has recognized that, under this provision, a public entity "may . . . be liable for failure to warn of [a] dangerous condition where the failure to warn is negligent and is

an independent, separate, concurring cause of the accident." (*Cameron v. State of California* (1972) 7 Cal.3d 318, 329 (*Cameron*).)

The courts of appeal are divided on how to apply design immunity to a failure to warn situation. (See *Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 600; *Weinstein v. Department of Transportation* (2006) 139 Cal.App.4th 52, 61; *Tansavatdi*, *supra*, 60 Cal.App.5th at p. 428, review granted.) Specifically, the disagreement is over whether a failure-to-warn claim against a public entity is categorically precluded by design immunity when the underlying dangerous condition that the public entity failed to warn against is covered by design immunity. (*Compton,* at p. 600 ["It would be illogical to hold that a public entity immune from liability because the design was deemed reasonably adoptable, could then be held liable for failing to warn that the design was dangerous."]; *Weinstein*, at p. 61 [following *Compton* to hold that "[s]ince defendant could not be held liable for these aspects of the roadway's design as dangerous conditions, it could not be held liable for failing to warn of these same aspects."]; *Tansavatdi*, at p. 428 ["even where design immunity covers a dangerous condition, it does not categorically preclude liability for failure to warn about that dangerous condition"].) *Tansavatdi* relied on our Supreme Court's opinion in *Cameron*, *supra*, 7 Cal.3d 318, which it described as holding that "a public entity may be held liable for failure to warn of a concealed dangerous condition even if

19

that dangerous condition was covered by design immunity." (*Tansavatdi*, at p. 441.)[12]

Our Supreme Court has granted review in *Tansavatdi* to resolve the dispute: "The only issue to be briefed and argued is the following . . . : Can a public entity be held liable under Government Code section 830.8 for failure to warn of an allegedly dangerous design of public property that is subject to Government Code section 830.6 design immunity?" (*Tansavatdi v. City of Rancho Palos Verdes*, S267453, Supreme Ct. Mins., Apr. 28, 2021, p. 592.)

Although the dispute that our Supreme Court will resolve in *Tansavatdi* is important, there is no need for us to state our position on it in order to decide this appeal.[13] There has never been any dispute in the case law that *when the public entity's decision not to install warning signs was an express part of the public entity's design process*, a failure to warn claim unquestionably falls under the umbrella of design immunity. As *Tansavatdi* explained, "Nothing in *Cameron* . . . suggests that design immunity cannot shield a failure to warn *that is itself caused by a qualifying design under section 830.6*. Indeed, as noted, the plaintiffs there alleged that the failure to warn 'was not the result of any design or plan which would confer immunity

---

12     *Cameron* held, "[W]e conclude that where the state is immune from liability for injuries caused by a dangerous condition of its property because the dangerous condition was created as a result of a plan or design which conferred immunity under section 830.6, the state may nevertheless be liable for failure to warn of this dangerous condition where the failure to warn is negligent and is an independent, separate, concurring cause of the accident." (*Cameron, supra,* 7 Cal.3d at p. 329.)

13     The outcome of this appeal therefore does not depend on the issue on which our Supreme Court granted review in *Tansavatdi, supra,* 60 Cal.App.5th 423.

under section 830.6 . . . .' (*Cameron, supra*, 7 Cal.3d at p. 327.)" (*Tansavatdi, supra*, 60 Cal.App.5th at p. 442, fn. 18, review granted, italics added.)

Here, because the undisputed evidence establishes that Shaffer considered and rejected the installation of "Share the Road" signs as part of his 2014 evaluation, the absence of the signs is *itself* part of the design approved by the County. Mendez's failure-to-warn claim is therefore precluded by design immunity.[14]

---

[14] Because we affirm the trial court's summary judgment ruling on the basis of design immunity, we need not, and do not, reach any of the other grounds for summary judgment raised by the County.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.